**Filed**

JUL - 2 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

**RECEIVED**

JUL - 2 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

1   GIBSON, DUNN & CRUTCHER LLP
    JEFFREY T. THOMAS, SBN 106409
2   JTthomas@gibsondunn.com
    4 Park Plaza, Suite 1400
3   Irvine, California 92614-8557
    Telephone: (949) 451-3800
4   Facsimile: (949) 451-4220

5

6   ANGELIQUE KAOUNIS, SBN 209833
    AKaounis@gibsondunn.com
7   333 South Grand Ave.
    Los Angeles, California 90071-3197
8   Telephone: (213) 229-7000
    Facsimile: (213) 229-7520

9

10  Attorneys for Nonparty
    HEWLETT-PACKARD COMPANY

11

12              UNITED STATES DISTRICT COURT

13          FOR THE NORTHERN DISTRICT OF CALIFORNIA

14                  SAN JOSE DIVISION

15

16  *In re* IBM Subpoena in the matter of:     CASE NO. **CV 07 - 80174 MISC.**

17  INTERNATIONAL BUSINESS MACHINES       Underlying action pending in the United States
    CORPORATION,                          District Court for the Southern District of New
18                                        York, CASE NO. CV 06-13565 SCR
            Plaintiff and Counterclaim
19          Defendant,                    **NONPARTY HEWLETT-PACKARD
                                          COMPANY'S NOTICE OF MOTION AND
20      v.                                MOTION TO MODIFY SUBPOENA AND
                                          FOR A PROTECTIVE ORDER; MEMO. OF
21  PLATFORM SOLUTIONS, INC.,             POINTS AND AUTHORITIES IN SUPPORT
                                          THEREOF**
22          Defendant and Counterclaimant.
                                          [Declaration of Angelique Kaounis and Request
23                                        for Judicial Notice in Support hereof; and
                                          [Proposed] Order filed concurrently herewith]
24
                                          Date: _____, 2007
25                                        Time: _____. m.
                                          Place: Courtroom __
26                                        Before: The Honorable _____

27

28

Gibson, Dunn &
Crutcher LLP

─────────────────────────────────────────────────────

**NONPARTY HEWLETT-PACKARD COMPANY'S NOTICE OF MOTION AND MOTION
TO MODIFY SUBPOENA AND FOR PROTECTIVE ORDER**

1       NOTICE IS HEREBY GIVEN that on _____, 2007, at _____, or as soon thereafter as

2   counsel may be heard by the above-titled Court, located at 280 South 1st Street, San Jose, CA 95113,

3   Nonparty Hewlett-Packard Company ("HP") will, and hereby does move the Court to modify the

4   scope of the Subpoena served by IBM on HP in the underlying action (the "Subpoena").

5       HP hereby moves this Court, pursuant to Federal Rule of Civil Procedure 45, for an order

6   limiting the scope of the Subpoena served by IBM on HP in this action, on the grounds that the

7   Subpoena: (1) is overly broad on its face, and therefore fails to allow reasonable time for compliance;

8   (2) seeks disclosure of privileged or other protected matter; (3) subjects HP to undue burden; and (4)

9   requires disclosure of a trade secret or other confidential research, development, or commercial

10  information. For these reasons, and because HP's counsel had acted in good faith, HP further moves

11  this Court pursuant to Federal Rule of Civil Procedure 26(c) subdivisions (2), (3), (4) & (7), for an

12  order that that the discovery be had only on the specified terms and conditions of, by the method set

13  forth, and subject to the objections in *HP's Objections and Responses to the May 31, 2007 Subpoena*

14  (filed concurrently herewith as Exhibit G to the Declaration of Angelique Kaounis).

15      This Motion is based on this Notice of Motion and Motion and accompanying Memorandum

16  of Points and Authorities, the Declaration of Angelique Kaounis and Request for Judicial Notice

17  (both filed concurrently herewith), and on all pleadings and papers on file in this action, and upon

18  such other evidence and arguments as may be presented to the Court at the time of the hearing.

19

20  DATED: July 2, 2007            JEFFREY T. THOMAS

                        ANGELIQUE KAOUNIS

21                          GIBSON, DUNN & CRUTCHER LLP

22                          By:

23                             Angelique Kaounis

24                          Attorneys for Nonparty

25                          HEWLETT-PACKARD COMPANY

26

27

28

Gibson, Dunn &
Crutcher LLP

2

# TABLE OF CONTENTS

**Page**

I. JURISDICTION ........................................................................................................... 1

II. STATEMENT OF ISSUES ......................................................................................... 1

III. STATEMENT OF FACTS .......................................................................................... 1

IV. ARGUMENT ............................................................................................................... 5

    A. The Court is Empowered to Modify the Subpoena and Grant a Protective Order. ................................................................................................................ 5

    B. This Motion is Timely. ...................................................................................... 6

    C. IBM's Subpoena Is Unduly Burdensome. ....................................................... 8

        1. The requests are unlimited in temporal and geographic scope. ........... 9

        2. The requests are not adequately tailored to the subject matter of the underlying litigation. ........................................................................... 11

        3. The requests seek information that is already in the possession of the parties and is thus more easily obtainable by other means. ............... 13

        4. The requests are unnecessarily duplicative of one another ............... 14

    D. The Subpoena Seeks Disclosure of HP's Trade Secrets and/or Confidential, Proprietary Information and Technology. ...................................................... 15

        1. HP's technology and R&D related materials ..................................... 15

        2. Materials relating to HP's business relationships ............................. 17

    E. HP's Counsel's Good Faith is Exemplified by the Fact that it Initiated Contact with IBM's Counsel Before IBM Even Issued a Subpoena. ......................... 18

V. CONCLUSION ......................................................................................................... 19

i

# TABLE OF AUTHORITIES

**Page**

## Cases

*Am. Elec. Power Co. v. U.S.*,
191 F.R.D. 132 (S.D. Oh. 1999) ................................................................ 7, 8, 9, 13

*Angell v. Shawmut Bank Conn. Nat'l Ass'n*, 153 F.R.D. 585 (M.D.N.C. 1994) ................................. 7

*Cacique, Inc. v. Robert Reiser & Co.*,
169 F.3d 619 (9th Cir. 1999)................................................................................ 16

*Celanese Corp. v. E. I. du Pont de Nemours & Co.*,
58 F.R.D. 606 (D. Del. 1973)......................................................................... 7, 8, 18

*Concord Boat Corp. v. Brunswick Corp.*,
169 F.R.D. 44 (S.D.N.Y. 1996) ...................................... 5, 7, 8, 9, 10, 12, 13, 14, 18, 19

*Dart Indus. Co., Inc. v. Westwood Chem. Co., Inc.*,
649 F.2d 646 (9th Cir. 1980) ............................................................................... 14

*Haworth, Inc. v. Herman Miller, Inc.*,
998 F.2d 975 (D.C. Cir. 1993) .......................................................................... 14, 18

*In re Sealed Case (Medical Records)*,
381 F.3d 1205 (D.C. Cir. 2004) ............................................................................. 9

*In re Vitamins Antitrust Litig.*,
267 F. Supp. 2d 738 (D. Ohio 2003)....................................................................... 17

*International Business Machines v. Platform Solutions Inc.*,
CASE NO. CV 06-13565 SCR (S.D.N.Y.).................................................................. 1

*Mattel, Inc. v. Walking Mountain Prods.*,
353 F.3d 792 (9th Cir. 2003)................................................................................ 16

*Micro Motion, Inc. v. Kane Steel Co.*,
894 F.2d 1318 (Fed. Cir. 1990)............................................................................. 18

*Moon v. SCP Pool Corp.*,
232 F.R.D. 633 (C.D. Cal. 2005) ........................................... 5, 7, 9, 14, 16, 17, 18

*Nova Biomedical Corp. v. I-Stat Corp.*,
182 F.R.D. 419, 422 (S.D.N.Y. 1998) ................................................................. 6, 7

*nSight, Inc. v. PeopleSoft, Inc.*,
No. 3:04 CV 3836 MMC (MEJ), 2006 U.S. Dist. LEXIS 22383 (N.D. Cal. April 13,
2006) ...................................................................................................... 16

*U.S. v. Diabetes Treatment Ctrs. of Am., Inc.*,
238 F. Supp. 2d 270, 278 (D.D.C. 2002) ................................................................. 7

*WM High Yield v. O'Hanlon*,
460 F. Supp. 2d 891 (S.D. Ind. 2006) ................................................ 6, 7, 8, 9, 10, 14

ii

Gibson, Dunn & Crutcher LLP

**Other Authorities**

9A Wright & Miller, Fed. Prac. & Proc. Civ.2d § 2459 (1995)............................................................. 5

9A Wright & Miller, Fed. Prac. & Proc. Civ.2d § 2463 (1995)............................................................. 5

**Rules**

Fed. R. Civ. Proc. 45,
    1991 Amendment, Advisory Committee Notes (1991) ................................................................ 6

Federal Rules of Civil Procedure 26 ............................................................................................ 1, 6

Federal Rules of Civil Procedure 26(b)......................................................................................... 9, 14

Federal Rules of Civil Procedure 26(c)........................................................................................... 5

Federal Rules of Civil Procedure 45 ........................................................................................ 1, 5, 6, 7

Federal Rules of Civil Procedure 45(c)........................................................... 5, 6, 7, 9, 13, 16, 17

Gibson, Dunn &
Crutcher LLP

**NONPARTY HEWLETT-PACKARD COMPANY'S NOTICE OF MOTION AND MOTION
TO MODIFY SUBPOENA AND FOR PROTECTIVE ORDER**

## I.     JURISDICTION

This matter arises out of the issuance of a May 31, 2007 subpoena (the "Subpoena") to nonparty Hewlett-Packard Company ("HP"), in the underlying action entitled *International Business Machines v. Platform Solutions Inc.*, CASE NO. CV 06-13565 SCR (S.D.N.Y.). HP is headquartered at 3000 Hanover St., Palo Alto, CA, and thus, the Subpoena in dispute issued from this Court. Declaration of Angelique Kaounis ("Kaounis Dec."), ¶ 2.

## II.     STATEMENT OF ISSUES

Pursuant to Rules 45 and 26 of the Federal Rules of Civil Procedure, nonparty HP seeks an order from this Court limiting the scope of the Subpoena served by Plaintiff and Counterclaim Defendant International Business Machines, Inc. ("IBM" or "Plaintiff") in the above-titled matter.[1] Specifically, HP requests that the Court modify the Subpoena to allow production as set forth in *HP's Objections and Responses to IBM's May 31, 2007 Subpoena* (*see* Kaounis Decl., Exh. G), on the specified terms, conditions and objections, and by the method set forth therein.

The Court should modify IBM's Subpoena because good cause and special circumstances exist here. *First*, the subpoena is facially overbroad and unduly burdensome because it: (a) is unlimited in time and geographic scope; (b) consists of 26 very broadly worded requests that seek irrelevant information; and (c) contains numerous requests seeking material that should first be sought from PSI. *Second*, the Subpoena seeks disclosure of HP's trade secrets and confidential proprietary information, but IBM has made no showing of relevance or need for these materials. *Third*, since HP became involved in the underlying litigation, it has acted in good faith and in a cooperative manner in dealing with both IBM's and Platform Solutions Inc.'s ("PSI") counsel, and promptly sought to file this motion upon learning that there had been a misunderstanding with IBM.

## III.     STATEMENT OF FACTS

This discovery dispute arises out of an action between IBM and PSI, currently pending before the District Court for the Southern District of New York. Request for Judicial Notice (filed

---

1   All references to "Rules" herein are to the Federal Rules of Civil Procedure unless otherwise noted.

1

1  concurrently herewith ("RJN")), Exh. A.  In that action, IBM contends that PSI uses IBM's software

2  in a manner that breaches an agreement between the parties and infringes several patents held by

3  IBM.  *Id.* at Exh. A, ¶¶ 5-6.  Specifically, IBM alleges that "PSI has developed and is . . . offering for

4  sale computer systems ("emulator systems") that seek to imitate IBM's computers." *Id.* at Exh. A,

5  ¶ 2.  According to IBM, PSI claims that these systems will run IBM's copyrighted operating systems

6  and other software programs on computers other than those for which the IBM software was written."

7  *Id.*  IBM claims that PSI's emulator systems "translate IBM's object code and [] store the object code

8  translations for execution on a computer using an Itanium processor" in a manner that violates IBM's

9  Customer Agreement ("ICA") with PSI and also infringes IBM's patents. *Id.* at Exh. A, ¶¶ 5-6.  In

10  response to these allegations, PSI asserted counterclaims alleging that IBM's software licensing

11  practices violate sections 1 and 2 of the Sherman Act and section 3 of the Clayton Act, and further,

12  that IBM has allegedly interfered with PSI's prospective economic relationship(s).  RJN, Exh. B.

13     HP has ongoing business relationships with both parties to the lawsuit, but is not a party to the

14  underlying litigation.  Kaounis Dec., ¶ 3.  Among other things, Defendant and Counterclaimant

15  Platform Solutions Inc. ("PSI") is an authorized reseller of HP Integrity Servers, and HP and IBM are

16  parties to a patent cross-licensing agreement.  *Id.*  In light of its nonparty status, and in recognition of

17  these relationships, HP has attempted to cooperate with both IBM and PSI from the moment it was

18  first subpoenaed in the action.

19     On March 14, 2007 HP was subpoenaed in the underlying action by PSI.  Kaounis Decl., ¶ 4.

20  Immediately upon receipt of the Subpoena, HP began preserving materials that might be relevant to

21  the underlying litigation, and has since continued those efforts.  *Id.*  HP also began collecting

22  documents for production in the underlying matter and processing those documents for production.

23  *Id.*

24     After serving objections and responses to the PSI subpoena, *HP's outside counsel initiated*

25  *contact with counsel for IBM* on April 13, 2007 to notify IBM that it had been subpoenaed, and to

26  suggest that IBM, PSI, and HP work together to craft a mutually agreeable Protective Order to govern

27  the scope of HP's production in the case.  *Id.* at ¶ 5.  In that telephone conversation, IBM's counsel

28  mentioned that IBM would be serving a subpoena on HP as well.  *Id.*  HP's counsel indicated its

2

Gibson, Dunn & Crutcher LLP

NONPARTY HEWLETT-PACKARD COMPANY'S MEMO. OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO MODIFY SUBPOENA AND FOR PROTECTIVE ORDER

1   preference to meet and confer with both parties simultaneously and expressed its intent to do a single

2   production of documents in response to both subpoenas. *Id.* IBM's counsel communicated that she

3   understood HP's position. *Id.* On that same day, counsel for HP sent a redlined version of a draft

4   Protective Order to counsel for both IBM and PSI, and reminded the parties of the confidential nature

5   of the material being sought by the subpoena. *Id.* at Exh. A. IBM's counsel responded to this email

6   and stated that she would forward it to other members of her team. *Id.*

7       Approximately six weeks after HP's counsel contacted counsel for IBM (on May 31, 2007),

8   IBM served a Subpoena on HP. *Id.* at ¶ 6 & Exh. B. The Subpoena contains 26 very broad requests,

9   and is unlimited in both temporal and geographic scope. *Id.* Shortly after receipt of the Subpoena,

10  HP's counsel sent a follow up email to counsel for IBM, reminding them of the confidential nature of

11  the materials referenced in IBM's Subpoena. *Id.* at ¶ 6 & Exh. C. HP's counsel did not seek an

12  extension of the 14 day objection period because counsel for HP believed that it would be able to

13  work out a reasonable production with both parties, and because the parties had already begun

14  meeting and conferring on the scope of the proposed Protective Order. *Id.* at ¶ 6. Indeed, HP never

15  intended to (and still does not) take the position that it would "wholesale" object to the Subpoena. *Id.*

16  Rather, HP's counsel always believed that a reasonable production could be achieved after all of the

17  parties met and conferred. *Id.*

18      On June 25, 2007, PSI's counsel contacted HP's counsel to inform her that a Protective Order

19  had finally been entered by the Court in the underlying action. Kaounis Decl., at ¶ 7 & Exh. D. In

20  response to the email (on June 27, 2007), HP's counsel reiterated HP's plan to meet and confer on a

21  one-time production that satisfied everyone's concerns. *Id.* Counsel for PSI agreed and offered to set

22  up a meet and confer regarding the scope of production. *Id.* On June 28, 2007, HP's counsel

23  contacted counsel for IBM (Ms. Weall) to set up the meet and confer call. *Id.* Ms. Weall's email

24  returned an automatic out-of-office reply that she would be out of the office until July 11. *Id.* at ¶ 7 &

25  Exh. E. Rather than delay the meet and confer until then, counsel for HP contacted another attorney

26  for IBM (Mr. Erwine, who had also been copied on prior correspondence regarding the matter), to

27  find out if Mr. Erwine would like to participate in the meet and confer or alternatively wait for Ms.

28  Weall's return. *Id.* at ¶ 8 & Exh. F. Mr. Erwine responded by telephone and stated that although he

3

1   was not available on the Friday of the following week, he was available that Thursday. *Id.* at ¶ 8.

2   Counsel for HP thus set up a meet and confer call for that day. *Id.* at ¶¶ 8-9.

3        During the interim, counsel for HP reviewed the Protective Order that had been entered by the

4   Court in the underlying matter. *Id.* at ¶ 9. On June 29, 2007, after noticing that none of HP's

5   proposed changes had been incorporated into the final Protective Order, HP's counsel contacted Mr.

6   Erwine by phone to confirm the parties would still have to work out some issues relating to the

7   Protective Order, and that HP would be producing subject to that objection, among others. *Id.* At

8   that point, IBM's counsel (Mr. Erwine) asked whether HP had served formal objections 14 days after

9   being served with the Subpoena, and HP's counsel explained that it had not, because it did not intend

10  to "wholesale" object to the Subpoena, but instead, it planned to serve responses (subject to the

11  customary objections) and meet and confer with both parties to reach an agreed-upon scope of

12  production. *Id.* Mr. Erwin expressed concern, and HP's counsel explained that HP would provide its

13  responses in advance of the meet and confer already agreed to, and the parties could proceed with the

14  meet and confer. *Id.* HP served its responses and objections on that same day. *Id.* at ¶ 9 & Exh. G.

15  Later that day (after 4:00 p.m. PDT), Mr. Erwine called HP's counsel back to say that it was IBM's

16  position that HP had waived its objections by not serving them 14 days after the Subpoena was

17  served, but that nonetheless, he would participate in the meet and confer. *Id.* at ¶ 9. HP's counsel

18  asked counsel for IBM to reconsider its position in light of HP's cooperation thus far, and the

19  upcoming meet and confer. *Id.* IBM's counsel refused to change its position (*id.*), and thus, HP

20  immediately filed this motion on the next business day following receipt of this news.

21       Clearly, it would be HP's preference for the parties to go forward with the planned meet and

22  confer and first try to resolve all issues that arise out of IBM's Subpoena before filing a motion of this

23  type. However, given IBM's position that HP has waived all objections, it is unfortunately necessary

24  for HP to file this Motion.

25

26

27

28

NONPARTY HEWLETT-PACKARD COMPANY'S MEMO. OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO MODIFY SUBPOENA AND FOR PROTECTIVE ORDER

# IV.  ARGUMENT

## A.  The Court is Empowered to Modify the Subpoena and Grant a Protective Order.

Rule 45 empowers a district court to quash or modify a subpoena where it "fails to allow reasonable time for compliance; . . . requires disclosure of privileged or other protected matter and no exception or waiver applies; . . . [or] subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A); *see Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 636 (C.D. Cal. 2005); *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 53 (S.D.N.Y. 1996); 9A Wright & Miller, § 2459 (1995) at p. 52 & § 2463, at p. 74.  Rule 45 also authorizes a court to "order . . . production only upon specified conditions" where a subpoena "requires disclosure of a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(c)(3)(B).

Additionally, upon a showing of good cause, the Court is empowered to "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including:

> (2) that the disclosure or discovery may be had only on specified terms and conditions, including a designation of the time or place;
>
> (3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery;
>
> (4) that certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters; . . . [and]
>
> (7) that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way.

Fed. R. Civ. P. 26(c).

Here, as set forth below, the Court should modify the scope of IBM's Subpoena under Rule 45 and order production as set forth in HP's objections and responses (*see* Kaounis Dec., Exh. B), because the Subpoena is overly broad on its face, subjects HP to undue burden, fails to allow reasonable time for compliance, purports to seek disclosure of privileged information, and seeks disclosure of HP's trade secrets and confidential proprietary information.  For these reasons, and

5

Gibson, Dunn & Crutcher LLP

1  because HP's counsel had acted in good faith, the Court should also find good cause under Rule 26 to

2  support modification of IBM's Subpoena.

3  **B.    This Motion is Timely.**

4         Under Rule 45, a nonparty served with the subpoena *duces tecum* may make objections to the

5  subpoena within 14 days after service or before the time for compliance, if less than 14 days.  Fed. R.

6  Civ. P. 45(c)(2)(B).  "Rule 45(c)(2)(B) does not require a person served with an objectionable

7  subpoena to follow its directives in lieu of filing a motion to quash.  Instead, Rule 45(c)(2)(B) states

8  that a person commanded to produce and permit inspection and copying, *may. . .* serve . . . written

9  objections," and by so doing be spared the burden of further action unless a court orders otherwise.

10  *WM High Yield v. O'Hanlon*, 460 F. Supp. 2d 891, 894 (S.D. Ind. 2006) (citing Fed. R. Civ. P.

11  45(c)(2)(B)) (emphasis added).[2]  This section of the Rule is not meant "'to diminish the rights

12  conferred by . . . any other authority,'" such as the ability to move to quash (or modify) a subpoena

13  afforded by Rule 45(c)(3); instead it was meant to broaden a nonparty's rights under the Rule. *Id.*;

14  *see* Fed. R. Civ. Proc. 45, 1991 Amendment, Advisory Committee Notes ("Paragraph (c)(3) explicitly

15  authorizes the quashing of a subpoena as a means of protecting a witness from misuse of the

16  subpoena power. It replaces and enlarges on the former subdivision (b) of this rule and tracks the

17  provisions of Rule 26(c)."); *Nova Biomedical Corp. v. I-Stat Corp.*, 182 F.R.D. 419, 422 (S.D.N.Y.

18  1998).

19         Regardless of whether a nonparty objects to a subpoena, Rule 45(c)(3) still allows a court to

20  modify or quash a subpoena on a "timely" Rule 45 motion, but it is silent as to what constitutes a

21  "timely" motion.  *WM High Yield*, 460 F. Supp. 2d at 894.  Some courts hold that "failure to serve

22  written objections within the fourteen-day limit prescribed by Rule 45(c)(2)(B) results in waiver (*see*

23  *Angell v. Shawmut Bank Conn. Nat'l Ass'n*, 153 F.R.D. 585, 588 (M.D.N.C. 1994)), while others

24  have held "that a non-party may timely move to quash a subpoena until the subpoena's return date has

25

26  2  Indeed, it has been observed by both courts and scholars that "[t]he permissive nature of Rule
      45(c)(2)(B) reflects the underlying purpose of the 1991 amendments to Rule 45, which were
27     designed to afford greater protections to those served with a subpoena than were available prior to
      amendment." *WM High Yield*, 460 F. Supp. 2d at 894 (citing 9A Wright & Miller, *Fed. Prac. &*
28     *Proc. Civ.2d* § 2463 (1995)).

6

Gibson, Dunn &
Crutcher LLP

**NONPARTY HEWLETT-PACKARD COMPANY'S MEMO. OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO MODIFY SUBPOENA AND FOR PROTECTIVE ORDER**

1  passed." *WM High Yield*, 460 F. Supp. 2d at 894; *see, e.g., U.S. v. Diabetes Treatment Ctrs. of Am.,*

2  *Inc.*, 238 F. Supp. 2d 270, 278 (D.D.C. 2002) ("In general, courts have read "timely" to mean within

3  the time set in the subpoena for compliance."); *Nova Biomedical Corp.*, 182 F.R.D. at 422 ("[S]ervice

4  anytime before the subpoenas' return date should be considered timely."). Under the latter rule, HP's

5  Motion (filed the next court day after the date for compliance with IBM's Subpoena) should be

6  considered by this Court.

7        In addition, where, as here, "the subpoena is overbroad on its face and exceeds the bounds of

8  fair discovery and the subpoenaed witness is a non-party acting in good faith," even Courts that

9  consider the 14-day rule as a measure of "timeliness," have entertained motions to modify or quash

10  past the 14 day deadline. *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 636 (C.D. Cal. 2005) (citation

11  omitted); *see Concord Boat Corp.*, 169 F.R.D. at 49; *see also Am. Elec. Power Co. v. U.S.*, 191

12  F.R.D. 132, 137 (S.D. Oh. 1999) (finding "that a strict application of Rule 45(c)(2)(B) appear[ed]

13  unjustified" where, among other things, there was no "showing of intentional failure or bad faith" by

14  the nonparty, the subpoenaed party was a non-party, and it had largely cooperated in the past "with

15  the Government's discovery efforts"). Additionally, where "counsel for the [nonparty] and counsel

16  for the subpoenaing party were in contact concerning the [nonparty] compliance prior to the time the

17  [nonparty] challenged the legal basis for the subpoena," courts have also considered this as a factor

18  that militates against a finding of waiver. *Am. Elec. Power Co.*, 191 F.R.D. at 137; *see Concord Boat*

19  *Corp.*, 169 F.R.D. at 49.

20        In this case, all of the relevant factors weigh in favor of a finding that this Motion is timely.

21  *First*, the Subpoena is facially overbroad and unduly burdensome—it is unlimited in temporal and

22  geographic scope, consists of 26 very broadly worded requests, and contains many requests that are

23  duplicative of one another and/or seek material that could be elicited from PSI. Kaounis Dec., Exh.

24  B. There can be no legitimate dispute that it would be impossible to comply with such a subpoena

25  within 30 days. *See, e.g., Celanese Corp. v. E. I. du Pont de Nemours & Co.*, 58 F.R.D. 606, 609-

26  10 (D. Del. 1973) (finding it was "completely unreasonable to have expected full compliance with

27  the subpoena between the time of service and its return date" of 20 days, where the 22 requests

28  contained therein "[we]re very broad both in tenor and time period covered," and the non-party

Gibson, Dunn & Crutcher LLP

7

NONPARTY HEWLETT-PACKARD COMPANY'S MEMO. OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO MODIFY SUBPOENA AND FOR PROTECTIVE ORDER

1  estimated that it would take two-man years to locate the documents).[3] *Second,* from the moment HP

2  became involved in the underlying litigation, it acted in good faith and in a cooperative manner in

3  dealing with both IBM's and PSI's counsel, even going so far as *to initiate discussions with IBM's*

4  *counsel when it was subpoenaed by PSI* to ensure that IBM was aware of the subpoena and the

5  discussions regarding a proposed Protective Order. *Third, because of HP's efforts to contact counsel*

6  *for IBM,* the parties have been in contact regarding compliance with the Subpoena. Indeed, the

7  parties have already begun the meet and confer process and by agreement of the parties, this process

8  is continuing. Thus, HP's Motion is timely. *See WM High Yield v. O'Hanlon,* 460 F. Supp. 891,

9  894-95 (S.D. Ind. 2006) (overruling party's objection to timeliness of a motion to quash where "the

10  breadth of Deloitte's subpoena, 40/86 Advisors' non-party status in this matter, and the fact that" the

11  subpoenaed party promptly "communicated its intent to seek court assistance should Deloitte decline

12  to withdraw its subpoena . . . place[d] 40/86 Advisors in the league of those non-parties whose

13  untimely objections were properly entertained").

14  **C.    IBM's Subpoena Is Unduly Burdensome.**

15        "Whether a subpoena imposes an 'undue burden' upon a witness is a case specific inquiry that

16  turns on 'such factors as relevance, the need of the party for the documents, the breadth of the

17  document request, the time period covered by it, the particularity with which the documents are

18  described and the burden imposed.'" *Concord Boat Corp. v. Brunswick Corp.,* 169 F.R.D. at 53

19  (citation omitted); *Am. Elec. Power Co. v. U.S.,* 191 F.R.D. 132, 137 (S.D. Oh. 1999).[4]  Moreover,

20  "the status of a person as a non-party is a factor that weighs against disclosure." *Am. Elec. Power*

21  *Co.,* 191 F.R.D. at 137; *see WM High Yield v. O'Hanlon,* 460 F. Supp. 2d 891, 895-96 (S.D. Ind.

22  2006) ("[N]on-party status is a significant factor a court must consider when assessing undue burden

23  for the purpose of a Rule 45 motion."); *Concord Boat Corp.,* 169 F.R.D. at 49 (noting that nonparty

24

25  ────────────────

26  3  Additionally, the Subpoena seeks disclosure of HP's trade secrets and confidential, proprietary
   information. *Id.* at Exh. B & ¶ 13.

27  4  The party seeking discovery bears the burden of demonstrating relevance. *Am. Elec. Power Co.,*
28  191 F.R.D. at 136.

8

Gibson, Dunn &
Crutcher LLP

NONPARTY HEWLETT-PACKARD COMPANY'S MEMO. OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO MODIFY SUBPOENA AND FOR PROTECTIVE ORDER

status "entitles [the witness] to consideration regarding expense and inconvenience" and citing Fed.

R. Civ. P. 45(c)(2)(B)). Finally, "a court may limit discovery that is 'unreasonably cumulative or

duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less

expensive." *WM High Yield*, 460 F. Supp. 2d at 895 (citing Fed. R. Civ. P. 26(b)(2)). As set forth

herein, the IBM Subpoena is overbroad on its face and subjects HP to undue burden.[5]

### 1.    The requests are unlimited in temporal and geographic scope.

IBM's Requests are "overbroad on [their] face and exceed[] the bounds of fair discovery"

because they are unlimited in time and geographic scope. *Moon*, 232 F.R.D. at 637-38 (finding four

of the seven requests at issue facially overbroad and beyond the scope of discovery where they sought

"(a) information over a ten year or greater period and (b) . . . information regarding *all* pool winter

covers, not only those 'within the Far East Region'"); *see also WM High Yield v. O'Hanlon*, 460 F.

Supp. 2d 891, 895-96 (S.D. Ind. 2006) (holding that the requests were "overly broad" where, among

other things, they sought "information over either an unlimited period of time or, when limited, over

seven years"). Specifically, Instruction No. 12 to IBM's Subpoena states that "[u]nless otherwise

indicated in a particular Request, the Request is not date or time limited." Kaounis Dec., Ex. B, at

Instruction No. 12. Not unexpectedly, none of the individual Requests contain temporal restrictions.

*Id.* Moreover, IBM's expansive definitions of the terms "IBM" and "PSI," and its failure to define

the term "HP," effectively encompass any IBM, HP, or PSI office and employee around the world.

*Id.* at Definition Nos. 4 & 5.

When interpreting any number of IBM's 26 individual Requests in light of these patently

overbroad instructions and definitions, the result is that the Subpoena "call[s] for virtually every

document in [HP's] files" *worldwide* for an unlimited period of time relating to the particular aspect

of the company's business. *Concord Boat Corp.*, 169 F.R.D. at 50. For example, Request No. 1

---

5 In addition to the Requests themselves, the Subpoena is burdensome because Instruction No. 2 (Kaounis Dec., Exh. B), appears to require HP to undertake special efforts to convert electronically stored materials. *See In re Sealed Case (Medical Records)*, 381 F.3d 1205, 1215 (D.C. Cir. 2004) (citing the Advisory Committee Notes to Rule 26 and noting that "the last sentence of Rule 26(b)(1) was added in 2000 to emphasize the need for active judicial use of subdivision (b)(2) to control excessive discovery'").

9

Gibson, Dunn &
Crutcher LLP

**NONPARTY HEWLETT-PACKARD COMPANY'S MEMO. OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO MODIFY SUBPOENA AND FOR PROTECTIVE ORDER**

1   seeks "[a]ll documents, communications, and things concerning PSI, including without limitation all

2   documents, communications, and things related to:  the proposed [business relationship with] PSI . . .;

3   any meetings or discussions between you and PSI; any agreements between you and PSI (including

4   without limitation indemnification agreements); negotiations regarding agreements; proposals;

5   contracts; licenses; minutes; presentations; reports; invoices; billing information; results; analyses;

6   correspondence; projections, forecasts, or estimates of PSI's future profits and/or sales by units and

7   revenues; projections, forecasts, or estimates of your return on your investment in PSI; and PSI's

8   System, the Liberty Server, and/or the Open Mainframe." Kaounis Dec., Exh. B, at Req. No. 1.  On

9   its face, this Request subsumes practically every single business-related email between any employee

10  of PSI and employee of HP.  Considering that PSI is an authorized reseller of HP hardware

11  throughout the United States, and further, that the parties have a relationship overseas as well, this

12  Request alone exceeds the bounds of reasonable discovery.  Kaounis Dec., ¶ 3.  The number of

13  people impacted by this one Request would require HP to undertake substantial and costly efforts to

14  secure, review, and produce the material responsive to this Request.  *Id.* at ¶ 10.

15      Request No. 7 is another example of the extreme overbreadth of IBM's Subpoena.  This

16  Request seeks "**[a]ll documents concerning IBM patents**, including without limitation: all

17  documents concerning the Patents-in-suit and/or the subject matter described therein, including but

18  not limited to all documents concerning H-P's first knowledge of the Patents-in-suit; all documents

19  concerning H-P's or PSI's potential or actual infringement of the Patents-in-suit, and/or PSI's potential

20  or actual liability regarding infringement of the Patents-in-suit; all documents concerning any IBM

21  "assurances" or "promises" to license IBM's patents to PSI; all documents concerning any IBM

22  "assurances" or "promises" to license any IBM software to PSI or for use on PSI's System, a Liberty

23  Server, an Integrity Server, and/or an Open Mainframe; and all documents concerning any "publicly

24  disseminated policy of reasonable, nondiscriminatory licensing" as alleged in paragraphs 8 and 68 to

25  75 of PSI's Counterclaims, contained in its Answer (copy attached as Exhibit F)." Kaounis Dec.,

26  Exh. B, at Req. No. 7 (emphasis added).  A search of IBM's website (http://www.ibm.com/ibm

27  /licensing/documents/top_ten_patent_holders.pdf) indicates that IBM was awarded over 25,000

28  patents in the ten years between 1993-2003 alone.  Kaounis Dec., ¶ 11 & Exh. H.  Plainly, responding

Gibson, Dunn &
Crutcher LLP

1   to a request seeking all documents concerning any of these patents would be burdensome to any large

2   technology company that has a patent cross-license agreement with IBM.

3         Additionally, Request No. 19, seeking "[a]ll documents concerning competition with IBM

4   S/390 or zSeries computers or products" also illustrates how IBM's Subpoena exceeds all reasonable

5   bounds of discovery under Rule 26.  On its own, this Request is facially overbroad, but when read in

6   conjunction with IBM's Definitions and Instructions, this Request encompasses an incalculable

7   number of documents regardless of whether they have anything to do with PSI (or even HP for that

8   matter), as long as they are in HP's possession someone around the world.

9         This same analysis applies to Request No. 10 (seeking "[a]ll documents that refer or relate to

10  the 'make, use or sell' exception in H-P's license grant"); Request No. 20 (seeking "[a]ll documents

11  relating to the ability of any end user of an IBM S/390 or zSeries computer to port, migrate, rehost, or

12  otherwise modify, move, or replace some or all of its IBM S/390 or zSeries applications, processes,

13  and/or data to or with another computing platform, including without limitation computers capable of

14  running the UNIX, Linux, and/or Windows operating systems"); Request No. 21 (seeking "[a]ll

15  documents concerning actual or potential migration or movement, in whole or in part, of any

16  application, process or data from IBM S/390 or zSeries platforms to any other computing platform,

17  including without limitation computers capable of running the UNIX, Linux, and/or Windows

18  operating systems"); Request No. 23 (seeking "[a]ll documents concerning testing, analysis, reverse

19  assembly, reverse compiling, reverse engineering, and/or translating, in whole or in part, z/OS,

20  OS/390, z/Architecture, and/or ESA/390."); and Request No. 26 (seeking "[a]ll documents that relate

21  to this Action").

22        **2.    The requests are not adequately tailored to the subject matter of the underlying
23               litigation.**

24        Each of aforementioned Requests (in Section C.1 above) reaches beyond the scope of the

25  underlying litigation and fails to state the nature of the documents sought with reasonable

26  particularity.  *See generally, Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. at 51 (request that

27  seeks "all documents submitted or given by you to by" one of three different law firms lacks

28  reasonable particularity).  For example, No. 10 appears to be a fishing expedition aimed at

11

Gibson, Dunn &
Crutcher LLP

1  discovering whether, and if so, how, HP has analyzed the scope of its licensing agreement with IBM,

2  without regard to whether such an analysis relates to the technologies at issue in the litigation.[6]

3  Additionally, aside from No. 10, each of the other Requests (Nos. 19, 20, 21, 23 and 26) also

4  indiscriminately seeks general industry information about IBM technology, again without regard to

5  whether it relates to PSI.

6        On this point, the case of *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 53

7  (S.D.N.Y. 1996), is instructive.  There, the court dealt with a similar situation in which a third party

8  had been subpoenaed in a large antitrust matter and the subpoenaing party alleged waiver.  *Id.*  In that

9  case, non-party witness Merrill Lynch had "acted as investment banker for Brunswick in connection

10  with specific acquisitions and divestitures of business assets, and other business transactions" for

11  approximately 20 years.  *Id.* at 46.  Because of this relationship, the plaintiffs believed "that

12  documents maintained by Merrill Lynch as investment banker and financial advisor to Brunswick

13  contain[ed] evidence necessary to support plaintiffs' various antitrust claims."  *Id.*  Accordingly,

14  plaintiffs issued a subpoena to Merrill Lynch containing 22 broadly worded requests, which sought,

15  among other things:

16        . . . All documents relating to any meeting(s) in which you and Brunswick were present,

17        including all agendas, correspondence, memoranda, and notes relating to such meeting.

18        . . . All documents relating to any communication(s) you have made relating to Brunswick's

19        financial condition.

20        . . . All documents you have submitted or given to Brunswick.

21        . . . All documents submitted or given to you by Brunswick.

22  *Id.*  In holding that "the Brunswick Subpoena [wa]s overly broad on its face," the court noted that

23  "[a]lmost half of the requests listed in the Brunswick Subpoena utterly fail to describe the documents

24  sought with any particularity."  *Id.* at 53.  The Court also emphasized that the subpoena "effectively

25  [sought] every document generated, received or maintained by Merrill during a ten-year period of its

26  _____

27  6  For this reason, the Request also calls for attorney-client privileged and work product protected

28     information, in violation of Rules 26 and 45.

Gibson, Dunn &
Crutcher LLP

**NONPARTY HEWLETT-PACKARD COMPANY'S MEMO. OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO MODIFY SUBPOENA AND FOR PROTECTIVE ORDER**

representation of Brunswick. Consequently, the Brunswick Subpoena calls for documents that are wholly irrelevant to the underlying antitrust litigation." *Id.* In light of these observations and the finding that "compliance with the terms of the Brunswick Subpoena would subject numerous Merrill Lynch employees and managers in several branch offices to countless hours of research, analysis, and compilation" the court held that "Merrill Lynch ha[d] not waived its objections to the Brunswick Subpoena, and that such objections [we]re properly before th[e] Court. *Id.*

Likewise, here, because the IBM "Subpoena is overbroad on its face and exceeds the bounds of fair discovery" the Court should find "that unusual circumstance and good cause" exist to modify the Subpoena as set forth in HP's objections and responses thereto. *Id.* at 52.

### 3. The requests seek information that is already in the possession of the parties and is thus more easily obtainable by other means.

HP is not a party to the underlying litigation. "Although 'this status does not relieve [HP] of its obligations either to respond to proper discovery requests or to comply with applicable rules, it does entitle [HP] to consideration regarding expense and inconvenience.'" *Concord Boat Corp.*, 169 F.R.D. at 52 (referring to Fed. R. Civ. P. 45(c)(2)(B)) (case citation omitted); *see Am. Elec. Power Co. v. U.S.*, 191 F.R.D. 132, 137 (S.D. Oh. 1999). Indeed, even where the nonparty "is not an unsophisticated litigant, and [] has access to the resources necessary to handle complex litigation[] . . . it should not be subject to the same burden of production that a party to the underlying litigation is subject." *Concord Boat Corp.*, 169 F.R.D. at 52 (considering "Merrill's status as a non-party relevant to determining whether Merrill's untimely action under Rule 45 bar[red] th[e] Court's consideration of Merrill's objections to the Brunswick Subpoena").

Moreover, many of the Requests violate Federal Rule of Civil Procedure 26(b)(2) by seeking information already within IBM's or PSI's possession, or in the possession of individuals or entities other than nonparty HP, but which are nonetheless available to IBM. For example, Request Nos. 1, 2, 3, 8, 9, 11, 12, 13, 14, 16, 17, 22, and 24, either in whole or in part, "pertain to [PSI], who is a party, and, thus, plaintiffs can more easily and inexpensively obtain the documents" from PSI, rather than from nonparty HP. *Moon*, 232 F.R.D. at 638; *see Dart Indus. Co., Inc. v. Westwood Chem. Co., Inc.*, 649 F.2d 646, 649 (9th Cir. 1980) (discovery restrictions may be even broader where target is

13

Gibson, Dunn & Crutcher LLP

NONPARTY HEWLETT-PACKARD COMPANY'S MEMO. OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO MODIFY SUBPOENA AND FOR PROTECTIVE ORDER

1  nonparty). IBM can and should seek "documents concerning any attempts and/or decisions to modify

2  or redesign PSI's System in view of any claim of the Patents-in-suit" (Request No. 8) from PSI before

3  seeking such materials from nonparty HP. *Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 978

4  (D.C. Cir. 1993) (affirming order requiring party to first attempt to obtain documents from opposing

5  party rather than nonparty).

6      Similarly, "documents, agreements, and/or communications concerning the conception,

7  design, research, development, testing, and/or evaluation of PSI's System or prototypes of PSI's

8  System . . ." should be more readily available from PSI. Kaounis Dec., Exh. B, at Req. No. 17; *see*

9  *also id.* at Req. No. 24. Thus, the information is obtainable from a source other than HP that is more

10  convenient, less burdensome, and less expensive, and IBM has had (or will have) ample opportunity

11  by way of other discovery in this action to obtain it. *See* Fed. R. Civ. Proc. 26(b)(2)(C). Unless IBM

12  can show that it has "been unable to obtain this information" from PSI, HP should not be forced to

13  respond to these Requests as worded in the Subpoena. *WM High Yield v. O'Hanlon*, 460 F. Supp. 2d

14  891, 896 (S.D. Ind. 2006).

15      **4.**    **The requests are unnecessarily duplicative of one another**

16      Putting aside its extreme overbreadth, the Subpoena also suffers from being unnecessarily

17  repetitive, thus making it even more burdensome to respond to. For example, Request No. 1 seeks

18  "[a]ll documents, communications, and things concerning PSI," and then enumerates a laundry list of

19  some examples that would be covered by the Request, including **agreements, billing information,**

20  **forecasts, and projections**, among many other things. Kaounis Dec., Exh. B, at Req. No. 1

21  (emphasis added). By definition, all of the other requests seeking material related to PSI are thus

22  subsumed at least in part by, and duplicative of Request No. 1. *See, e.g., id.* at Nos. 2-6, 8, 9-14, 17-

23  18, 20-22, and 24-26. For instance:

24      • Request No 2 seeks "documents concerning **any partnership, joint venture,**

25        **distributorship, or other relationship**, whether formal or informal, between [HP] and

26        PSI."

27

28

Gibson, Dunn & Crutcher LLP

NONPARTY HEWLETT-PACKARD COMPANY'S MEMO. OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO MODIFY SUBPOENA AND FOR PROTECTIVE ORDER

- Request No. 12 seeks "[a]ll documents concerning any **compensation paid** by PSI to H-P for any processor, product, program, device, instrumentality, software, firmware, millicode, and/or microcode designed or modified by H-P, or for or on behalf of H-P, for use in or with a PSI System, Liberty Server, and/or Open Mainframe."

- Request No. 25 seeks "[a]ll documents and communications relating to plans, **projections**, estimates, and/or **forecasts** of H-P's revenues from or relating to PSI . . ."

*Id.* (emphasis added). Other examples of this rampant duplication exist throughout the Subpoena as well. *Compare* Kaounis Decl., Exh. B, at Req. No. 7 (seeking "[a]ll documents concerning IBM patents, including without limitation: all documents concerning the Patents-in-suit and/or the subject matter described therein . . .") *with id.* Req. No. 8 (seeking "[a]ll documents concerning any attempts and/or decisions to modify or redesign PSI's System in view of any claim of the Patents-in-suit"). Rather than being carefully tailored to *avoid* imposing undue burden on HP, these Requests appear to be worded to do just the opposite.

**D.     The Subpoena Seeks Disclosure of HP's Trade Secrets and/or Confidential, Proprietary Information and Technology.**

**1.     HP's technology and R&D related materials**

Federal Rule of Civil Procedure 45(c)(3)(B) was intended to provide protection for the intellectual property of nonparties. *See Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 814 (9th Cir. 2003) (citing Rule 45's Advisory Committee Notes (1991)). For IBM to gain access to the confidential proprietary and/or trade secret material sought by many of its Requests (*see, e.g.*, Kaounis Dec., Exh. B, at Request Nos. 3, 13, 14, 18, 19, 20, 21, and 23), it must make the required showing under Rule 45(c) of a substantial need for the material that cannot otherwise be met without undue hardship. *nSight, Inc. v. PeopleSoft, Inc.*, No. 3:04 CV 3836 MMC (MEJ), 2006 U.S. Dist. LEXIS 22383, at *6 (N.D. Cal. April 13, 2006); *see Moon*, 232 F.R.D. at 637 (noting that the court may quash a subpoena under Fed. R. Civ. P. 45(c)(3)(B) where it "requires disclosure of a trade secret or other confidential research, development, or commercial information").

15

Gibson, Dunn &
Crutcher LLP

**NONPARTY HEWLETT-PACKARD COMPANY'S MEMO. OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO MODIFY SUBPOENA AND FOR PROTECTIVE ORDER**

1    Almost every Request contained in the Subpoena seeks divulgence of HP's confidential,

2   proprietary and/or trade secret material. The most egregious example of this is Request No. 14,

3   which *actually requires HP to turn over its technology for inspection*, by seeking "[a]ll versions,

4   releases, levels, and/or models of any processor, product, program, device, instrumentality, software,

5   firmware, millicode, and/or microcode **designed or modified by H-P**, or for or on behalf of H-P, for

6   use in or with PSI's System, the Liberty Server, and/or the Open Mainframe." Exh. B. Similarly,

7   Request No. 3 (re: HP's Integrity Server), No. 13 (re: use of HP's technology with that of PSI or

8   nonparty T3T), No. 18 (re: HP R&D efforts), No. 19 (re: HP competitive intelligence), No. 20 (re: HP

9   R&D efforts), No. 21 (same), No. 23 (same), all seek information concerning HP's research and

10  development efforts generally in the field of technology at issue, in most cases, without regard to

11  whether they relate to PSI. Kaounis Dec., ¶ 13 & Exh. B. These Requests are thus overbroad and

12  subject HP to an undue burden, particularly given the extremely sensitive nature of their subject

13  matter.

14    Considering the highly confidential nature of its R&D and technology, the sizable investment

15  that HP makes in such R&D, and the dubious relevance of the material sought by these Requests,

16  permitting disclosure of this type of information to a formidable competitor such as IBM could cause

17  serious competitive injury to HP. Kaounis Dec., ¶¶ 12-13 & Exh. I; *see In re Vitamins Antitrust*

18  *Litig.*, 267 F. Supp. 2d 738, 741-42 (D. Ohio 2003) (granting motion to quash where: (1) it seemed

19  clear that Aventis was requesting trade secrets—"the lifeblood of [the nonparty's] financial well

20  being;" (2) certain of the defendants in the antitrust litigation were nonparty's "direct competitors,

21  [which] only heighten[ed] the Court's first concern;" (3) the Court had no enforcement power over

22  the extant protective order, and thus would be unable to protect the nonparty's interests were its terms

23  to be breached; and (4) there was a possibility that the records would be irrelevant if certain motions

24  in the underlying case were granted).[7] Thus, as a nonparty, HP should not be required to risk this

25  investment and produce such information.

26

27  _____

    7  Just by way of example, in the last three years alone, HP invested roughly $3.5 billion annually in

28     research and development. *See* Kaounis Dec., Exh. I (select pages from HP 10-K for fiscal year

                                                              [Footnote continued on next page]

                                                  16

Gibson, Dunn &
Crutcher LLP

1       Assuming that IBM could make the required showing of relevance and necessity to warrant

2   the production of certain highly confidential HP trade secrets and proprietary information, such

3   disclosure should only be pursuant to an appropriate "outside counsels' eyes only" protective order,

4   which currently does not exist in the underlying case. *See* RJN, Exh. 3, at ¶ 7c-d; *see generally*

5   *Cacique, Inc. v. Robert Reiser & Co.*, 169 F.3d 619, 622-23 (9th Cir. 1999) (noting that a protective

6   order does not absolve the requirement to establish relevance or need—its purpose "is to prevent

7   harm by limiting disclosure of *relevant* and *necessary* information"). While HP has been and will

8   continue working with the parties to agree to a reasonable protective order to govern the scope of its

9   production in the underlying case, HP still has some valid concerns that need to be addressed. For

10  example, as mentioned above, under the current Protective Order entered in the underlying matter,

11  IBM employees (in-house counsel and litigation staff) would have access to any highly confidential

12  proprietary information produced by HP. *See* RJN, Exh. 3, at ¶ 7c-d. For the reasons discussed

13  above, HP has very valid concerns about disclosing this type of information to one of its most

14  formidable competitors, and as such, will continue to seek the inclusion of an "outside counsels' eyes

15  only" provision in the Protective Order that governs its production. *See* Kaounis Dec., ¶ 13.

16      **2.    Materials relating to HP's business relationships**

17      Another "specific ground" supporting a motion to modify or "quash a subpoena is that it seeks

18  'commercial information.'" *Moon*, 232 F.R.D. at 638 (citing Fed. R. Civ. P. 45(c)(3)(B)). Here,

19  several of the Requests at issue seek discovery of HP's commercial relationships with other

20  nonparties to this litigation. For example, Request Nos. 4, 5, 6, and 25 seek information regarding

21  HP's relationship with its authorized reseller T3T, but T3T is nowhere mentioned in the complaint or

22  counterclaims in this case. *See* Kaounis Dec., Exh. B & RJN, Exhs. A & B. Similarly, Request Nos.

23  5, 6, and 16 seek information regarding nonparty customers of both HP and PSI, or other third parties,

24  none of whom are mentioned in the pleadings. *Id.* While IBM might be able to show the relevance

25  of materials relating to HP's "relationship with defendant" PSI, it is simply not entitled to discover

26  

27  [Footnote continued from previous page]
    ending Oct. 31, 2006, *Consolidated Statement of Earnings*, at 74, at http://media.corporate-

28  ir.net/media_files/irol/71/71087/pdf/HP_2006AR_ADA.pdf).

Gibson, Dunn &
Crutcher LLP

**NONPARTY HEWLETT-PACKARD COMPANY'S MEMO. OF POINTS AND AUTHORITIES**
**IN SUPPORT OF MOTION TO MODIFY SUBPOENA AND FOR PROTECTIVE ORDER**

1  documents related to nonparty HP's confidential "business relationship[s] with other nonparties."

2  *Moon*, 232 F.R.D. at 638; *see also Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1323 (Fed.

3  Cir. 1990) ("Confidential commercial information warrants special protection under Rule 26(c)(7).

4  . . . *Even if relevant*, discovery is not permitted where no need is shown, or compliance would be

5  unduly burdensome, or where harm to the person from whom discovery is sought outweighs the need

6  of the person seeking discovery of the information."). Finally, as to those Requests that seek

7  information regarding PSI's relationships with third parties, IBM should be compelled to show why it

8  cannot obtain that information through PSI before seeking it from HP. *See Haworth, Inc. v. Herman*

9  *Miller, Inc.*, 998 F.2d 975, 978 (D.C. Cir. 1993).

10  **E.    HP's Counsel's Good Faith is Exemplified by the Fact that it Initiated Contact with**

11  **IBM's Counsel Before IBM Even Issued a Subpoena.**

12          As discussed above, at the first opportunity, HP's counsel contacted counsel for IBM to

13  communicate HP's willingness to work with both parties to the litigation. Kaounis Dec., at ¶ 5.

14  Rather than continue to embrace that opportunity and save the parties countless costs in legal fees by

15  litigating this motion, IBM chose instead to force HP to file the motion. IBM's position is not

16  warranted in light of the patently overbroad subpoena it issued to nonparty HP. Rather than taking its

17  current position, IBM should meet and confer in good faith with the goal of resolving all issues

18  without the needed for court intervention. *Concord Boat Corp.*, 169 F.R.D. at 52 (Rule 45 should not

19  be interpreted so as to "discourage informal dispute resolution among parties who cause issuance of

20  subpoenas *duces tecum* and those to whom the subpoenas are issued," as such a result would

21  "certainly would work against the efficient administration of justice").

22  //

23  //

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

**NONPARTY HEWLETT-PACKARD COMPANY'S MEMO. OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO MODIFY SUBPOENA AND FOR PROTECTIVE ORDER**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## V.    CONCLUSION

HP respectfully requests that the Court grant its Motion and limit the scope of the IBM Subpoena to those categories that HP has agreed to produce as set forth in Exhibit G to the Kaounis Declaration.

DATED:  July 2, 2007

JEFFREY T. THOMAS
ANGELIQUE KAOUNIS
GIBSON, DUNN & CRUTCHER LLP.

By: _____
        Angelique Kaounis

Attorneys for Nonparty
HEWLETT-PACKARD COMPANY

Gibson, Dunn &
Crutcher LLP

19