# EXHIBIT  J

# GIBSON, DUNN & CRUTCHER LLP

### LAWYERS

A REGISTERED LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

333 South Grand Avenue  Los Angeles, California 90071-3197
(213) 229-7000
www.gibsondunn.com

AKaounis@gibsondunn.com

July 12, 2007

### VIA U.S. MAIL AND EMAIL/PDF

Direct Dial
(213) 229-7137

Fax No.
(213) 229-6137

Client No.
T 38126-00565

Richard W. Erwine, Esq.
Quinn Emanuel Urquhart
  Oliver & Hedges, LLP
51 Madison Ave., 22nd Floor
New York, NY  10010

Ryan C. Kirkpatrick, Esq.
Susman Godfrey L.L.P.
Suite 950
1901 Avenue of the Stars
Los Angeles, CA  90067-6029

     Re:    *IBM* v. *PSI*: meet and confer re: third party subpoenas to HP

Dear Counsel:

     Thank you again for engaging in last week's meet and confer regarding your clients' subpoenas to Hewlett-Packard Company ("HP"). As promised, I have summarized the basic points of our meet and confer and have enclosed a draft Protective Order to this letter for your review and comment. Also, as you saw by way of the Amended Notice served last Thursday, in response to IBM's request, HP agreed to continue the hearing date for its *Motion to Modify Subpoena and for a Protective Order* that was filed with the Court on July 2, 2007. Finally, as we discussed last week, HP has already begun its document collection and intends to begin its rolling production in the latter part of July.

1. The Protective Order

     I explained that HP will not produce documents without a two-tiered Protective Order in place that allows for the designation of certain materials as "outside counsel's eyes only." IBM's counsel (Mr. Erwine) and PSI's counsel (Mr. Kirkpatrick) were generally agreeable to this, and Mr. Kirkpatrick gave his opinion that the acquisition discussions would not necessarily warrant the higher level of protection, but generally agreed with HP that confidential proprietary information would. Both of you stated that you did not believe it was necessary to amend the current Protective Order to accommodate a non-party subpoena, but instead thought that a letter agreement would suffice. I agreed to send a letter (that each party would countersign) to amend the Protective Order and provide two-tiered protection for HP. As you may recall, HP already

# GIBSON, DUNN & CRUTCHER LLP

Richard W. Erwine, Esq.
Ryan Kirkpatrick, Esq.
July 12, 2007
Page 2

submitted a proposed Protective Order to the Court for the Northern District of California, so I have crafted the attached letter agreement to reflect the terms of that proposal (this is essentially the proposal that I sent to you on April 13 of this year).

## 2. Time limitation

As set forth in its objections and responses to the subpoenas, HP proposed that the relevant time period be from January 1, 2004 until the filing of the complaint. IBM's counsel requested that we go back to January 1, 2003, and provide documents through to the present. PSI expressed some concern that the time period proposed by HP would preclude the production of the HP/IBM Cross-Licensing Agreement. I explained that HP would prefer to have a general rule as to the time limitations, understanding that for certain requests there might be exceptions. The parties ultimately did not come to a final agreement on a specific time-frame guideline. I am in the process of discussing IBM's proposed time frame with my client and will let you know HP's response as soon as I can.

## 3. Geographic scope

I explained that HP was not willing to produce without some reasonable geographic limits on the scope of the subpoenas. As I mentioned, it is HP's position that it should not have to search for materials outside the United States unless and until there is a further clarification of the scope of the geographic market at issue in the antitrust portion of the case. I further explained that in our responses and objections to each subpoena, we identified the HP, IBM and PSI office locations that we believe are primarily involved, and that HP's search efforts would thus be circumscribed to the relevant people in these HP offices. I asked each of you to review the limitations in HP's objections and to let me know if there were other IBM or PSI offices that were materially involved with HP in regards to the underlying facts. Mr. Kirkpatrick noted that because of certain customer relationships (Deutsche Bank and Bancha della Marcha) there are two HP offices (in Italy and Germany) that he believes may have relevant documents. I agreed to talk to HP further about searching for relevant materials in these two offices, but said that for the time being, HP would only produce from the offices listed in HP's responses.

## 4. IBM's position regarding HP's "Rule 34" objections

In response to HP's recurring objection that certain materials should be sought from a party first (pursuant to Federal Rule of Civil Procedure 34), Mr. Erwine took the position that there is no accurate way to compare what materials PSI has in relation to what HP has. Furthermore, Mr. Erwine asserted that the mere fact that something is in HP's possession is a material issue. I explained that while I understood it might be difficult to ascertain whether certain communications were in the possession of PSI or HP (and therefore HP would not intentionally withhold materials it has already collected), with respect to IBM's technology-related requests (regarding PSI technology), IBM should seek the material from PSI first.

# GIBSON, DUNN & CRUTCHER LLP

Richard W. Erwine, Esq.
Ryan Kirkpatrick, Esq.
July 12, 2007
Page 3

## 5. HP's Motion to Modify Subpoena and for Protective Order

IBM's counsel took the position that HP's Motion was premature and that it should be taken off calendar. I explained that HP was unwilling to do that at this point, but that it would continue to meet and confer with both parties to try and resolve the outstanding issues before seeking court intervention. As mentioned above, HP has agreed to continue the hearing until September 11, to give IBM time to review the materials it produces and decide whether there were any additional materials that it might need.

## 6. Specific requests (corresponding to the IBM subpoena)

RFP # 1: HP will produce as set forth in its responses. The parties will inquire further if they believe that the production is not complete.

RFP # 2: IBM expressed concern regarding HP's statement that it would only produce documents related to IBM. I tried to clarify that this did not mean the document literally had to refer to IBM, but rather that it had to substantially relate to the underlying issues in the litigation. I hope this clarification has alleviated your concerns.

RFP # 3: HP will produce as set forth in its responses.

RFP # 4: HP will not produce beyond what it has agreed to produce in relation to No. 1. I explained that for those requests where (a) HP objected to production altogether and (b) also objected on the basis that the request was duplicative of Request No. 1 (and/or another request), HP would not separately search for materials in response to the later request, but would only produce responsive materials to the extent they were captured by HP's response to No. 1 (or the other earlier request).

RFP #5 & 6: IBM would like documents related to T3T. I explained that HP would produce such documents to the extent that they are also related to PSI (and were encompassed by its document collection in response to other requests), but will not separately search for T3T materials.

RFP # 7 & 8: IBM agreed to HP's proposed limitation that its responses be limited to only the patents at issue.

RFP # 9: HP will produce documents related to patents at issue, and will not exclude documents just because they may refer to other patents if they are otherwise responsive. This Request seems to be seeking HP materials that reach beyond the scope of its relationship with PSI. I explained that I don't think the proper showing of relevance as to this issue has been made.

# GIBSON, DUNN & CRUTCHER LLP

Richard W. Erwine, Esq.
Ryan Kirkpatrick, Esq.
July 12, 2007
Page 4

RFP # 10: HP will produce as set forth in its responses.

RFP # 11: HP will produce as set forth in its responses. IBM would like materials specifically related to HP's or PSI's customers' abilities to license IBM software. I explained that HP would not separately search for such materials, but to the extent they were encompassed in the materials relating to HP's or PSI's ability to license such software, those materials could be produced.

RFP # 12: HP will produce as set forth in its responses. IBM was concerned that HP's response, which is limited to those materials "sufficient to show" the relationship with PSI, does not necessarily encompass the entire relationship. I explained that HP would not withhold responsive materials that we believed materially described the relationship with PSI, but at the same time, HP would not do a separate search for invoices, receipts of payment, and the like.

RFP # 13: We disagreed on HP's response to this Request. As I mentioned, according to my understanding of the HP's relationship with PSI, I don't think there are materials that really speak to this issue. IBM explained that this Request was aimed at understanding whether HP was developing software updates and the like for PSI. I said that I would discuss this further with HP.

RFP # 14: This Request has been tabled. IBM has received most of this from PSI and may not need anything from HP.

RFP # 15: The parties are basically on the same page with regard to this Request. IBM was concerned with the limit imposed by HP's response (which excludes R&D personnel). I explained that HP should not have to separately search for R&D related materials, because it is not my belief that HP conducts R&D specifically related to PSI. IBM was also concerned about time limitation on this Request, and in particular, asked that HP search back to January 1, 2003 in responding to this Request. I explained that HP would produce according to our objections and responses and that we would be open to revisiting this issue later if need be.

RFP # 16: As with No. 4 above, HP will not produce beyond what it agreed to produce in relation to No. 1. I explained HP's position that it will not separately search for materials in response to this Request.

RFP # 17: I explained that I believed HP's search for documents responsive to No. 1 should cover this Request, but we will be mindful of the code names "Vail, Merlin, Manta, Gambit and Stingray," just to be sure.

# GIBSON, DUNN & CRUTCHER LLP

Richard W. Erwine, Esq.
Ryan Kirkpatrick, Esq.
July 12, 2007
Page 5

RFP # 18: As with No. 13 above, I don't believe that HP is specifically designing technology for PSI, so I don't think HP should have to search for materials in response to this Request. I told IBM I would make a good faith effort to verify that this is the case.

RFP # 19: I asked for further clarity on this Request and specifically asked IBM to reword it. IBM said that it would do so, but alternatively would be willing to review the production and see if more was needed. HP will produce as set forth in its responses.

RFP #s 20 & 21: IBM would be willing to limit these RFPs to PSI's system only. Accordingly, I stated that HP would not separately search for materials in response to this Request, but would produce materials to the extent that they are covered in its response to RFP#1.

RFP #22: HP will produce according to its responses (I don't believe we ever reached a definitive agreement on this Request).

RFP #s 23 & 24: IBM would be willing to limit this RFP as to materials that relate to PSI's system only, and would be willing to accept HP's production under No. 1. Again, as I mentioned, I don't think there's much to dispute here. If a document relates to PSI's system under No. 1, HP will produce it according to its responses, but HP will not separately search for materials in response to Request Nos. 23 & 24.

RFP # 25: We agreed to disagree on this one, and will resume discussions on this if need be after IBM reviews HP's production.

RFP # 26: We did not reach agreement on this Request.

I believe that I have captured the major points of our discussion. Please let me know if I've left out any material issues, or if you have any questions regarding these matters.

Very truly yours,

Angelique Kaounis

AK/ak                                                           I00261791_1.DOC
cc:    Jeffrey T. Thomas, Esq. (w/Encl.)
       Katherine Weall, Esq. (w/Encl.)

# GIBSON, DUNN & CRUTCHER LLP

### AGREEMENT TO AMEND JUNE 14, 2007 STIPULATED PROTECTIVE ORDER;
### Case No. Case No. 06 CV 13565 (SR) (S.D.N.Y.)

WHEREAS both Plaintiff and Counterclaim Defendant International Business Machines ("IBM"), and Defendant and Counterclaim Plaintiff Platform Solutions Inc. ("PSI") have each issued subpoenas for the production of documents on nonparty Hewlett-Packard Company ("HP") in the above-titled matter; and

WHEREAS, HP, and IBM and PSI (collectively "the Parties") are currently meeting and conferring as to the scope of HP's production of materials in response to these subpoenas; and

WHEREAS, in order to facilitate these meet and confer efforts between the HP and Parties, HP would like to produce certain materials to the Parties under the protection of an "Outside Attorney's Eyes' Only" Protective Order;

THEREFORE be it resolved that HP and the Parties Agree to Amend the attached Protective Order (as entered on June 14, 2007 by the Honorable Stephen C. Robinson, U.S. District Court Judge (S.D.N.Y.) (the June 14, 2007 Protective Order") as follows:

1.  The First Paragraph on Page 1 of the Protective Order shall read as follows:
    WHEREAS, discovery in this action will require the disclosure of trade secrets or other confidential research, development, technical, financial, or commercial information of both parties and of non-parties from whom discovery may be sought;

2.  Paragraph 2 shall be amended to include the following language, after the definition of "Confidential Information" (at the end of the paragraph):

    Confidential Information may be additionally designated "OUTSIDE COUNSEL'S EYES ONLY." The OUTSIDE COUNSEL'S EYES ONLY designation is reserved for Confidential Information that constitutes proprietary financial or technical data or commercially sensitive competitive information, including but not limited to Confidential Information obtained from a nonparty pursuant to a current Nondisclosure Agreement ("NDA"), Confidential Information relating to future products not yet commercially released, strategic plans, and settlement agreements or settlement communications, the disclosure of which is likely to cause harm to the competitive position of the producing party. Source code listings (and descriptions of their operation), object code listings (and descriptions of their operation), and integrated circuit diagrams are deemed to be OUTSIDE COUNSEL'S EYES ONLY, unless otherwise agreed by the producing party.

    Documents designated OUTSIDE COUNSEL'S EYES ONLY and information contained therein shall be available only to "Qualified Persons" as that term is defined in paragraph 7 subsections (a), (b), (e)-(k) of the attached June 14, 2007 Protective Order under the terms outlined for these groups of persons herein, and the Parties are specifically prohibited from disclosing such materials to in-house legal counsel and in-house litigation support staff of either party (as referred to in paragraph 7 subsections (c)-(d) of the attached June 14, 2007 Protective Order).

# GIBSON, DUNN & CRUTCHER LLP

Richard W. Erwine, Esq.
Ryan Kirkpatrick, Esq.
July 12, 2007
Page 7

3.  Paragraph 13 shall not be construed to require HP to produce electronic materials in any format other than .tiff. files.

4.  The following language shall be added to the end of Paragraph 21:

    To the extent that any party intends to introduce to the Court or a jury the Protected Documents produced by a non-party to this Action, such party shall provide written notice by email and fax to the producing non-party three (3) business days in advance of the proposed disclosure date, so as to provide the producing non-party with sufficient notice to object to disclosure of Protected Documents, by way of providing a written objection to the party seeking disclosure. The parties shall attempt to resolve any objections informally. If the objections cannot be resolved, the objecting party may move the Court for an Order preventing disclosure within ten (10) business days after the parties' attempts at informal resolution have concluded. If any such motion is made, the objecting party shall bear the burden of proof. If no such motion is made within said ten (10) business day period, the Court shall allow the use of the non-party Protected Documents in a manner that ensures reasonable and adequate safeguards are in place to protect against the dissemination of Protected Documents consistent with the terms of this Protective Order. In the event objections are made and not resolved informally and a motion is filed, disclosure of Protected Documents shall not be made except by Order of the Court (or to any limited extent upon which the parties may agree in writing).

5.  The following paragraphs shall be added as Paragraphs 30-32, respectively.

    30.         In the event of any hearing or trial in this Action at which either party wishes to introduce Protected Documents to the Court or a jury, the parties will put adequate safeguards in place to protect against the dissemination of Protected Documents. The parties will meet and confer concerning the least intrusive means of handling Protected Documents at a hearing or trial to minimize the burdens to the Court and Court staff. To the extent that any party intends to introduce to the Court or a jury the Protected Documents produced by a non-party to this Action, such party shall provide written notice by email and fax to the producing non-party three (3) business days in advance of the proposed disclosure date, so as to provide the producing non-party with sufficient notice to object to disclosure of Protected Documents, by way of providing a written objection to the party seeking disclosure. The parties shall attempt to resolve any objections informally. If the objections cannot be resolved, the objecting party may move the Court for an Order preventing disclosure within ten (10) business days after the parties' attempts at informal resolution have concluded. If any such motion is made, the objecting party shall bear the burden of proof. If no such motion is made within said ten (10) business day period, the Court shall allow the use of the non-party Protected Documents in a

# GIBSON, DUNN & CRUTCHER LLP

Richard W. Erwine, Esq.
Ryan Kirkpatrick, Esq.
July 12, 2007
Page 8

manner that ensures reasonable and adequate safeguards are in place to protect against the dissemination of Protected Documents consistent with the terms of this Protective Order. In the event objections are made and not resolved informally and a motion is filed, disclosure of Protected Documents shall not be made except by Order of the Court (or to any limited extent upon which the parties may agree in writing).

31.    Nothing herein shall be construed to alter or enlarge the parties' rights and responsibilities under any of the discovery provisions of the Federal Rules of Civil Procedure.

32.    This Protective Order is entered without prejudice to the right of any party or nonparty to apply to the Court at any time for additional protection or to relax or rescind the restrictions of this Order when convenience or necessity requires.

Agreed to and amended as set forth herein.


| QUINN EMANUEL URQUHARD OLIVER & HEDGES, LLP | SUSMAN GODFREY L.L.P. | GIBSON, DUNN & CRUTCHER LLP |
|---|---|---|
| By:_____ | By:_____ | By:_____ |
| Richard W. Erwine | Ryan C. Kirkpatrick | Angelique Kaounis |
| Counsel for IBM | Counsel for PSI | Counsel For HP |
| DATED: July __, 2007 | DATED: July __, 2007 | DATED: July __, 2007 |

*Robinson, J*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - -x
                           :

INTERNATIONAL BUSINESS
MACHINES CORPORATION,         :

             Plaintiff,     :

       -vs.-             :

PLATFORM SOLUTIONS, INC.,    :

             Defendant.   :

- - - - - - - - - - - - - - - - - - - - - - - - - -x

Case No. 06 CV 13565 (SCR)

## STIPULATED PROTECTIVE ORDER

        WHEREAS, discovery in this action will require the disclosure of trade secrets or other confidential research, development, or commercial information of both parties and of non-parties from whom discovery may be sought;

        WHEREAS, the parties have in good faith conferred and have agreed upon the terms of this Stipulated Protective Order ("Protective Order");

        The parties stipulate, pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, subject to the approval of the Court, to the following Protective Order:

        **IT IS THEREFORE ORDERED THAT:**

1.    Documents, things, or discovery responses constituting or containing Confidential Information disclosed or produced by any party in this litigation, and any nonparty from whom discovery is sought and who desires the protection of this Protective Order, are referred to as "Protected Documents." Except as otherwise indicated below, all documents, things, or discovery responses designated by the producing party as "CONFIDENTIAL", and which are disclosed or produced in *International Business*

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____

*Machines Corporation v. Platform Systems, Inc.*, Civil Action No. 06-CV-13565 ("Action") are Protected Documents and are entitled to confidential treatment as described below. Protected Documents include any information contained therein, as well as copies or summaries of such documents.

2.    Confidential Information: Documents, things, or discovery responses produced or furnished during the course of the Action may be designated as containing Confidential Information, prior to producing or furnishing the documents, things, or discovery responses, by placing on each page and each thing to which the designation applies a legend substantially as follows:

"CONFIDENTIAL"

"Confidential Information" shall mean any non-public confidential or proprietary information that is designated as such by the producing party.

3.    Filing Under Seal. No document, thing, or discovery response constituting or containing Confidential Information shall be filed with this Court unless it is filed under seal. This Protective Order, once signed by the Court, constitutes authorization to file documents under seal that are properly designated as CONFIDENTIAL under this Protective Order. The Clerk of this Court is directed to maintain under seal all documents, things, and discovery responses, including without limitation transcripts of deposition testimony, designated as CONFIDENTIAL which are so filed in this Action. In the event a non-party seeks access to documents, things, or discovery responses that have been filed under seal, the non-party must petition the Court with notice to all parties for modification of this Protective Order upon a showing of good cause.

2

4.   Protected Documents shall not include materials that on their face show they have been
     published to the general public.

5.   At any time after the delivery of Protected Documents, counsel for the party or parties
     receiving the Protected Documents may challenge the CONFIDENTIAL designation of
     all or any portion thereof by providing written notice thereof to counsel for the party
     disclosing or producing the Protected Documents.  Failure of a party to challenge a claim
     of confidentiality of any document, thing, or discovery response shall not constitute a
     waiver of the right to assert at any subsequent time that the same is not in fact
     confidential or not appropriately designated for any reason.

     If the parties are unable to agree as to whether the CONFIDENTIAL designation of the
     challenged Protected Documents is appropriate, the party or parties receiving the
     Protected Documents shall certify to the Court that the parties cannot reach an agreement
     as to the confidential nature of all or a portion of the Protected Documents.  Thereafter,
     the party or parties disclosing or producing the Protected Documents shall have ten (10)
     business days from the date of certification to file a motion for protective order with
     regard to any Protected Documents in dispute.  The party or parties producing the
     Protected Documents shall have the burden of establishing that the disputed Protected
     Documents are in fact Confidential Information.  If the party or parties producing the
     Protected Documents do not timely file a motion for protective order, then the Protected
     Documents in dispute shall no longer be subject to confidential treatment as provided in
     this Order.  All Protected Documents are entitled to confidential treatment pursuant to the
     terms of this Protective Order until and unless the parties agree in writing to the contrary,
     a party fails to timely move for a protective order, or a contrary determination is made by

3

the Court as to whether all or a portion of a Protected Document is entitled to confidential

treatment.

6.    Confidential Treatment.  Protected Documents shall not be used or shown, disseminated,

copied, or in any way communicated to anyone for any purpose whatsoever, except as

provided for below.  This Protective Order does not affect or limit a producing party's

ability to use or disclose its own Protected Documents.

7.    Protected Documents shall be disclosed only to the following persons ("Qualified

Persons"):

(a)    counsel of record in this Action for the party receiving Protected Documents;

(b)    employees of such counsel (excluding experts and investigators) assigned to and
necessary to assist such counsel in the preparation and trial of this Action;

(c)    in-house attorneys for the party receiving Protected Documents who are involved
in the prosecution or defense of this Action;

(d)    in-house litigation support personnel;

(e)    individuals identified as authors or recipients of Protected Documents, provided
that each individual only has access to Protected Documents in which the
individual is identified as an author or recipient;

(f)    The Court and Court employees and personnel;

(g)    consultants or experts and their staffs retained by the parties or their attorneys for
purposes of this action, subject to the procedures of paragraphs 11 and 12, who
are not employees of the parties;

(h)    outside copying and computer services necessary for document handling, and
other litigation support personnel (e.g., graphic designers and animators);

(i)    jury consultants and mock jurors, provided that all mock jurors agree in writing
not to discuss or disclose any Protected Documents outside the context of the
mock jury exercises, and that no Protected Documents are left in the possession of
the mock jurors after conclusion of the mock jury exercises;

(j)    professional translators and interpreters who are retained by the attorneys for a
party for the purposes of this litigation, provided that all translators and
interpreters agree in writing not to discuss or disclose any Confidential

4

Information outside the context of their respective translation or interpretation assignment(s);

(k)     others to whom the producing party has given written consent.

8.     Protected Documents shall be used solely for the prosecution or defense of this Action. The prosecution or defense of this Action does not include, without limitation, prosecution of patent applications, reissue applications, reexamination applications, interference proceedings or opposition proceedings. No party or other person shall disclose or release to any person not authorized under this Protective Order any Protected Document(s) subject to this Protective Order for any purpose, or to any person authorized under this Protective Order for any purpose other than the prosecution or defense of this Action. It is understood that counsel for a party may give advice and opinions to his or her client regarding this litigation based on his or her evaluation of Protected Documents received by the party provided that such rendering of advice and opinions shall not reveal the content of such Protected Documents, except by prior written agreement with counsel for the producing party.

9.     No party shall disclose any Confidential Information to any lawyer, patent agent, or other person who currently writes or prosecutes patent applications relating to the products or technologies at issue in this litigation, or who substantively reviews or provides substantive input to the drafting of such patent applications for each party. This prosecution bar from access to Confidential Information shall (1) apply to the prosecution of patents for a party or affiliates thereof and (2) remain in effect during the pendency of this litigation and for one year after the conclusion thereof, including appeals.

10.    Any persons actually provided access to any Protected Documents under Paragraphs 7(c), 7(d) or 7(g) agree not to participate (and the parties agree not to employ said individuals)

during this action and for a period of one (1) year from the conclusion of this action, or one (1) year from such person's last access to Protected Documents (or portions thereof), whichever is earlier, in the development, design, product planning, product management, project management, or customer support for computer hardware and software that are similar in use or function to any of the computer hardware and software at issue in this litigation. Provided, however, that this paragraph does not restrict the ability of in-house attorneys involved in the prosecution and defense of this Action and subject to paragraph 7(c) to participate in corporate decision making as necessary to perform their professional responsibilities as attorneys, provided that they do so without using or disclosing any Confidential Information.

11. No disclosure of Protected Documents shall be made to persons in paragraph 7(g), unless such person has first executed a written Confidentiality Undertaking (in the form set forth in Exhibit A hereto) acknowledging and agreeing to be bound by the terms of this Protective Order. Copies of such Confidential Undertakings shall not be required for staff members working under the supervision of an individual signing a Confidential Undertaking pursuant to paragraph 7(g). In any case, the provisions of paragraph 12 must be followed prior to any disclosure of Protected Documents to such individuals or their staff.

12. If any party desires to disclose Protected Documents pursuant to paragraph 7(g) above to any technical or industry expert or consultant who has previous professional or consulting experience with the products or technology at issue in this litigation, it must first identify in writing to the attorneys for the producing party each such expert or consultant. Such identification shall include (i) the full name and professional address and/or affiliation of

the proposed expert or consultant and (ii) an up-to-date curriculum vitae identifying at

least all other present employment, prior employment in the field over the past four years,

and a list of all litigation matters in which the expert or consultant has been deposed or

testified at trial over the past four years. The producing party shall have ten (10) business

days from receipt of such notice to object to disclosure of Protected Documents to

individuals identified pursuant to this paragraph. Objections shall not be made except

where the objecting party has a good faith belief that it will be harmed by the disclosure.

Any such objection made shall in detail: (i) state the basis for the objection; (ii) identify

the categories of the objecting party's Protected Documents that underlie the objection;

(iii) identify how the party believes such Protected Documents may be used to its harm;

and (iv) state why the objecting party believes the protections already afforded by this

Protective Order would be inadequate to prevent the anticipated harm such that the

objection is warranted. The parties shall attempt to resolve any objections informally. If

the objections cannot be resolved, the objecting party may move the Court for an Order

preventing disclosure within ten (10) business days after the parties' attempts at informal

resolution have concluded. If any such motion is made, the objecting party shall bear the

burden of proof. If no such motion is made within said ten (10) business day period, the

consultant or expert shall be permitted to receive Protected Documents pursuant to the

terms of this Protective Order. In the event objections are made and not resolved

informally and a motion is filed, disclosure of Protected Documents to the expert or

consultant shall not be made except by Order of the Court (or to any limited extent upon

which the parties may agree in writing). These obligations shall not apply to experts or

consultants in economics, damages, or other subjects that do not involve technical

7

expertise relating to the products and technologies at issue or industry expertise relating

to the manufacture, marketing and distribution of those products and technologies.

13.    The parties agree to produce all responsive source code, object code, microcode,

millicode, firmware and software ("Code") in native or other suitable electronically

readable (non-image) format. This paragraph places no obligation on any party to

produce Code other than what the producing party deems responsive based on the

requesting party's document requests. Notwithstanding anything herein to the contrary,

any Code produced may not be copied, transmitted, used or accessed by the parties

except as described in this paragraph and in paragraph 14. A receiving party may copy

the Code of a producing party into the hard drive and/or into the RAM of one or more

stand-alone (e.g., neither networked nor connected to the Internet) computers for the

purposes of conducting analyses of the Code, but may not otherwise copy such Code

except as described below. The Code shall be handled as follows:

(a) Access to the Code is limited to the list of Qualified Persons set forth in

paragraphs 7(a), 7(b), 7(c), 7(d), 7(f), and 7(g) only. Counsel must maintain a list

of all individuals who have access to the Code. Said Code is to be kept secure

throughout the litigation by means of being stored on one or more stand-alone

non-networked computers, with access to said Code limited to those persons

designated under this Protective Order. Such Code may not be loaded onto a

centralized database or transmitted over a network.

(b) All copies of a producing party's Code or portions thereof shall be marked as

"CONFIDENTIAL" in the name of the producing party, and shall only be filed

under seal.

8

(c) Within 60 days of the conclusion of the litigation, including appeals, the original produced version must be returned to the producing party and the attorneys for the receiving party must certify in writing that any copies of the Code have been completely erased and obliterated to the point that the Code cannot subsequently be recovered or recreated.

14. If IBM purchases or otherwise acquires one or more Liberty, H-P, or other servers including PSI software and/or firmware ("the PSI System") directly from PSI, IBM's purchase and handling of all such PSI Systems are subject to following provisions:

(a) Each PSI System will at all times be maintained under the custody and control of persons identified below in paragraph (b).  IBM employees and consultants not designated under this Protective Order may be provided access to the PSI System(s) for the sole purpose of assisting with any initialization, setup, configuration or maintenance of IBM software and hardware.

(b) For all purposes other than those specified in paragraph (a), the PSI System(s) shall be considered "Confidential" material.  Access to the PSI System(s), including software, is limited to the list of qualified persons set forth in paragraphs 7(a), 7(b), 7(c), 7(d), and 7(g) only.

(c) IBM may connect up to five (5) dedicated computers to the PSI System(s) at any one time.  The dedicated computers may be locally connected to one another, but may not be connected to any other external network or to the Internet.  Each dedicated computer will at all times be maintained under the custody and control of persons identified above in paragraph (b).

9

(d) Pursuant to the terms of this Protective Order, PSI will furnish to IBM all

software, firmware or hardware "fixes" or other corrective services that it

provides to other customers.

(e) If there is any malfunctions with the PSI System(s), IBM may notify PSI of

the problem and PSI will work with IBM in good faith to solve the problem.

(f) The purchases of one or more PSI Systems by IBM directly from PSI is

confidential, and that purchase shall be maintained as Confidential Information

under this Protective Order.

15.  Counsel for a party may withhold Protected Documents from production as exempt from

discovery because such Protected Documents are protected from disclosure under the

attorney-client privilege or work product doctrine of Fed. R. Civ. P. 26(b), or any other

privilege or immunity.  For Protected Documents so withheld, each Protected Document

withheld, along with the protection claimed thereof and the basis for the protection, shall

be reported on a log consistent with Fed. R. Civ. P. 26(b)(5).  Counsel for a party

producing documents need not list in any such log or produce any documents created

after the start of the Action that reflect attorney-client communications related to the

present litigation or contain attorney work product related to the Action.

16.  The producing party shall promptly notify the receiving party in writing in the event of an

inadvertent production of documents subject to work product immunity, attorney-client

privilege or any other privilege or immunity from disclosure, after the producing party

learns of such inadvertent production.  Upon being notified by the producing party

pursuant to this paragraph, counsel for the non-producing party shall use his or her best

efforts to retrieve all copies of the documents at issue, and all summaries or related

documents that contain any of the information in the inadvertently produced documents. The receiving party shall return or destroy all copies of such documents within ten (10) business days of such notice and certify such return or destruction in writing to the producing party. Further, such inadvertent production is not a waiver of the attorney-client privilege or any work product immunity or any other privilege or immunity from disclosure.

17.    With respect to all materials provided for inspection by a party's counsel, designation by stamping or labeling need not be made until copies of the materials are requested after inspection and selection by counsel. Making documents and things available for inspection shall not constitute a waiver of any claim of confidentiality, and all materials provided for inspection by a party's counsel shall be treated as though designated "CONFIDENTIAL" from the time of the inspection until otherwise designated pursuant to this Protective Order.

18.    The term "copy" as used herein means any photographic, mechanical or computerized copy or reproduction of any document or thing, or any verbatim transcript, in whole or in part, of such document or thing.

19.    To the extent that Protected Documents are used in depositions, such documents or information shall remain subject to the provisions of this Order, along with the transcript pages of the deposition testimony and/or trial testimony referring to the Protected Documents or information contained therein.

20.    Any court reporter, stenographer or transcriber who reports or transcribes testimony in this Action, shall agree that all Protected Documents designated as such under this Protective Order shall remain confidential pursuant to the terms of this Protective Order,

11

and shall not be disclosed by them, except pursuant to the terms of this Protective Order, and that any notes or transcriptions of such testimony (and any accompanying exhibits) will be retained by the reporter or delivered to counsel of record.

21. In the event of any hearing or trial in this Action at which either party wishes to introduce Protected Documents to the Court or a jury, the parties will put adequate safeguards in place to protect against the dissemination of Protected Documents. The parties will meet and confer concerning the least intrusive means of handling Protected Documents at a hearing or trial to minimize the burdens to the Court and Court staff.

22. Deposition Testimony shall be treated as a Protected Document for a period of thirty (30) days after receipt of the deposition transcript by the furnishing party to permit the furnishing party to review the transcript and designate the transcript as a Protected Document (in its entirety, or by page/line designations). A furnishing party may designate information disclosed at a deposition as a Protected Document: (i) during the deposition, by requesting that the reporter place the appropriate legend as set forth in paragraph (2) hereof on the first page and all subsequent pages of the transcript containing Confidential Information, or (ii) within thirty (30) days after receipt of the transcript, by sending a written list of the particular pages of the transcript that contain such information along with a copy of the transcript pages stamped with the legend set forth in paragraph (2) hereof to Outside Counsel for all Receiving Parties, and requesting that the stamped pages be substituted in each copy of the transcript.

23. Notwithstanding any other provisions of this Protective Order, nothing herein shall prohibit counsel for a party from disclosing a Protected Document to any current employee of the producing party, or to any person that the document clearly identifies as

an author, addressee, or recipient of such document or who can be shown by appropriate

foundation (without disclosing the contents of the document) to have received, seen, or

been in possession of the Protected Document or the Confidential Information contained

in the Protected Document. Regardless of the designation pursuant to this Protective

Order, if a document or testimony makes reference to the actual or alleged conduct or

statements of a person who is a potential witness, counsel may discuss the subject matter

of such conduct or statements with such witness, and such discussion shall not constitute

disclosure in violation of this Protective Order.

24.     Inadvertent or unintentional production of documents or information containing

Confidential Information which are not designated "CONFIDENTIAL" shall not be

deemed a waiver in whole or in part of a claim for confidential treatment. The producing

party shall promptly notify the receiving party in writing in the event of an inadvertent

production of documents or information containing Confidential Information which are

not designated "CONFIDENTIAL", after the producing party learns of such inadvertent

production. Upon being notified by the producing party pursuant to this paragraph,

counsel for the non-producing party shall use his or her best efforts to retrieve all copies

of the documents at issue, and all summaries or related documents that contain any of the

information in the inadvertently produced documents. The producing party will replace

those copies with copies containing the proper confidentiality designation.

If a party who receives material designated as Confidential learns that, by inadvertence or

otherwise, it has disclosed such material to any person or in any circumstance not

authorized by this Stipulated Protective Order, that party must immediately (1) notify in

writing the producing party of the unauthorized disclosures, including the name of each

person to whom such disclosure was made; (2) use best efforts to retrieve or destroy all

copies of the protected material and certify such retrieval or destruction in writing to the

producing party; (3) inform the person or persons to whom unauthorized disclosures were

made of all the terms of this Stipulated Protective Order; and (4) request such person or

persons to execute the Confidentiality Undertaking attached hereto as Exhibit A, and

notify the producing party of any individual who refuses to execute the Confidentiality

Undertaking.

25.     By entering this Protective Order and limiting the disclosure of information in this case,

the Court does not intend to preclude another court from finding that information may be

relevant and subject to disclosure in another case. Any person or party subject to this

Protective Order who may be subject to a subpoena, motion or other legal process

(collectively, a "Request") to disclose another party's Confidential Information pursuant

to this Order shall promptly notify the producing party of the Request, in writing by

facsimile and e-mail, and promptly provide that party with a copy of the Request so as to

provide the producing party with the opportunity to appear and be heard on whether such

information should be disclosed (and in all events such notification shall be provided

within three (3) business days of receiving such Request). The person or party who may

be subject to a Request to disclose another party's Confidential Information shall also

promptly inform in writing the person who made the Request that some or all of the

material covered by the Request is the subject of this Protective Order, and shall deliver a

copy of this Protective Order to the requesting party. Further, the person or party

receiving the Request shall not produce the requested Confidential Information unless (1)

the producing party agrees to such production in writing, (2) the producing party fails to

file a protective order with the Court prior to the response date, or (3) the Court orders such production.

26.   The terms of this Protective Order are applicable to Protected Documents provided by a non-party.  Protected Documents produced by a non-party in connection with this Action pursuant to the terms of this Protective Order shall be protected by the remedies and relief provided by this Protective Order.

27.   After termination of this Action, the provisions of this Protective Order shall continue to be binding, except with respect to those Protected Documents that, consistent with the terms of this Protective Order, become a matter of public record.  This Court retains and shall have continuing jurisdiction over the parties and recipients of the Protected Documents for enforcement of the provisions of this Protective Order following termination of this litigation.

28.   Upon termination of this Action by dismissal, judgment, or settlement, counsel for the party or parties receiving Protected Documents shall return the Protected Documents or certify in writing their destruction within sixty (60) calendar days to the counsel for the party or parties disclosing or producing the Protected Documents.  The party or parties receiving the Protected Documents may keep a copy of any Protected Document filed with the Court.  Further, the party or parties receiving the Protected Documents may keep their attorney work product which refers or relates to any Protected Documents.  Attorney work product may be used in subsequent litigation provided that such use does not disclose Protected Documents.

29.   This Protective Order shall be binding upon the parties and their attorneys, successors, executors, personal representatives, administrators, heirs, legal representatives, assigns,

15

subsidiaries, divisions, employees, agents, independent contractors, or other persons or

organizations over which they have control.

So ORDERED AND SIGNED this 19th day of June       2007.

STEPHEN C. ROBINSON
UNITED STATES DISTRICT JUDGE