# EXHIBIT K

**quinn emanuel** trial lawyers | new york
51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL: (212) 849-7000 FAX: (212) 849-7100

WRITER'S DIRECT DIAL NO.
(212) 849-7197

WRITER'S EMAIL ADDRESS
katherineweall@quinnemanuel.com

July 17, 2007

**VIA FEDEX**

Angelique Kaounis
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197

Re:   **IBM v. Platform Solutions, Inc.**
      **Case No. 06-13565 (SCR)**

Dear Angelique:

I write in response to your letter of July 12, 2007, and in order to memorialize the positions taken by IBM during your meet and confer conversation with Richard Erwine and Ryan Kirkpatrick on July 5, 2007.

**A.   Protective Order**

We have reviewed your proposed amendment to the protective order entered in this case. As Mr. Erwine stated during the meet and confer, IBM believes the Hewlett-Packard Company's ("HP's") concerns about confidentiality can be satisfactorily addressed by a separate letter agreement between the parties and HP, without amending the Protective Order already entered by the court. We are amenable to considering a proposed letter agreement drafted by HP, and, in principle, do not see any problems with your proposed terms, although we would, of course, have to discuss them with our client before giving final approval to any agreement.

**quinn emanuel urquhart oliver & hedges, llp**
LOS ANGELES | 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL (213) 443-3000 FAX (213) 443-3100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL (415) 875-6600 FAX (415) 875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL (650) 801-5000 FAX (650) 801-5100
SAN DIEGO | 4445 Eastgate Mall, Suite 200, San Diego, California 92121 | TEL (858) 812-3107 FAX (858) 812-3336

### B. HP's Objections to IBM's Request for the Production of Documents

#### 1. Definitions

IBM does not agree to change or limit any of the definitions in its Requests for the Production of Documents ("the Requests"), which were specifically tailored to capture various categories of responsive documents. IBM objects in particular to the changed definition of "PSI's System," which would render HP's proposed production substantially different from what IBM has requested. IBM also objects to HP's limitation of its production to documents that "relate to IBM." Many of the documents requested — documents concerning HP's proposed acquisition of PSI being just one example — by their very nature have no connection to IBM, even though they are directly relevant to the underlying claims in this action.

You have indicated that HP would be amenable to rephrasing this proposed limitation to read "to the extent the documents also relate to IBM *or to any of the underlying claims in this litigation.*" IBM will review the documents HP produces in light of this modification and determine whether the limitation is acceptable to IBM.

#### 2. Global Comments

In general, IBM does not believe that any of its Requests are subsumed by Request No. 1. IBM respectfully asks that HP respond to each Request on its own merits, rather than stating that the Request is subsumed by Request No. 1.

Where HP has objected to the production of documents on grounds of confidentiality, IBM states that such documents are adequately protected by the confidentiality order entered in this proceeding, or could alternatively be protected via a letter agreement between HP and the parties, as outlined above.

IBM objects to the limitation of the relevant time period for the production of responsive documents to January 1, 2004 through the filing of the complaint. IBM does not believe that the responses to the Requests can be limited by any fixed date, and notes that the appropriate date may vary considerably from Request to Request. The date of January 1, 2003 was not raised during the meet and confer as a global starting point for HP's document collection, but as an example of the minimum time frame IBM would consider acceptable in relation to the particular Request being discussed at that time.

IBM notes that, although some of the documents requested from HP may be available from PSI — a fact that IBM is unable to ascertain — HP still bears an obligation to produce any relevant documents responsive to IBM's Requests that are found in HP's files. IBM is entitled to know not only the substance of these documents, but whether they are in HP's possession.

Finally, IBM notes that HP did not agree to produce documents relating to the Liberty Server or Open Mainframe. These documents are directly relevant to the underlying claims in this action and IBM requests that they be produced.

**C.     Specific Requests**

Request No. 1: IBM does not agree with HP's definition of "PSI's system." IBM further objects to HP's statement that HP will produce documents that refer or relate to meetings or discussions between PSI and HP "to the extent the documents also relate to IBM." Many documents relevant to the underlying claims in this action and responsive to this Request — to cite just one example, any documents related to HP's proposed acquisition of PSI — would not, by definition, relate to IBM. Finally, IBM notes that HP did not agree to produce documents relating to the Liberty Server or Open Mainframe. These documents are directly relevant to the underlying claims in this action and IBM requests that they be produced.

Request No. 2: IBM does not agree with HP's decision to produce responsive documents only "to the extent that such documents also refer or relate to IBM," for the reasons outlined above.

Request No. 3: IBM notes that HP did not agree to produce documents relating to the Liberty Server or Open Mainframe. As these documents are directly relevant to the underlying claims in this action, IBM requests that they be produced.

Request No. 4: Any confidential information produced pursuant to this Request can be safeguarded either by the pre-existing protective order or by a separate letter agreement between HP and the parties.

Request No. 5: IBM notes that this Request also asks for information regarding any funding HP may have provided to T3 Technologies. Furthermore, IBM observes that information about non-party customers is relevant to the underlying claims in this action.

Request No. 6: IBM does not agree with HP's decision to produce responsive documents only "to the extent that such documents also refer or relate to IBM," for the reasons outlined above. In particular, IBM notes that HP has not agreed to produce documents regarding the actual or possible indemnification of HP or HP's customers by T3T. As these documents are directly relevant to the underlying claims in this action, IBM requests that they be produced.

Request No. 7: IBM agrees to limit this Request from "All documents concerning IBM Patents" to the Patents-in-suit.

Request No. 8: IBM does not agree with HP's decision to produce responsive documents only "to the extent that they relate to PSI," and notes that documents responsive to this Request would not necessarily be in the possession of PSI. HP may, for example, have internal documents relevant to this Request.

Request No. 9: IBM's Request asks not only for documents that specifically relate to the Patents-in-suit, but also documents concerning whether and how any agreement between HP and IBM would apply to the making, selling, or use of PSI's System, the Liberty Server and/or the Open Mainframe. As these documents are directly relevant to the underlying claims in this action, IBM requests that they be produced.

4

Request No. 10: IBM agrees to limit the scope of this Request from "All documents that refer or relate to the 'make, use or sell' exception in H-P's license grant" to those documents that also relate to PSI's system.

Request No. 11: IBM notes that HP has not agreed to produce documents relating to HP's or PSI's customers' ability to use IBM software in connection with PSI's system, or documents relating to the Liberty Server and the Open Mainframe. As these documents are directly relevant to the underlying claims in this action, IBM requests that they be produced.

Request No. 12: IBM objects to HP's agreement to produce documents only "to the extent that such documents refer or relate to IBM." The documents sought by IBM in this Request would not necessarily make reference to IBM. As these documents are directly relevant to the underlying claims in this action, IBM requests that they be produced.

Request No. 13: IBM notes that this Request calls not only for documents relating to PSI's use of the Integrity Server, but also in the use or inclusion of everything that accompanies the Integrity Server to comprise PSI's system, and requests that such documents be produced.

Request No. 14: IBM agrees that HP does not need to respond to this Request at this time.

Request No. 15: First, IBM does not agree to narrow this Request to cover only the time period from January 1, 2006 until the filing of the complaint in this action. Second, IBM does not agree to any limitation of the documents produced to those from HP personnel responsible for the marketing and sale of the Integrity Server. IBM's Request encompassed the documents of HP personnel responsible for manufacturing, licensing and research and development, in addition to marketing and sales, and further requested documents related to the Liberty Server, Open Mainframe and all products that comprise those servers, including, but not limited to, processors, programs, devices, instrumentalities, software, firmware, millicode and or microcode. IBM requests that HP produce all such documents.

Request No. 16: IBM notes that, although some of the documents requested from HP may be available from PSI — a fact that IBM is unable to ascertain — HP still bears an obligation to produce any relevant documents responsive to IBM's Requests. IBM is entitled to know not only the substance of these documents, but whether they are in HP's possession.

Request No. 17: IBM does not agree with HP's limitation of its production in response to this Request to the documents HP has agreed to produce in response to Requests 1 - 3. IBM does not believe that this Request is subsumed by and duplicative of Request No. 1.

Request No. 18: IBM does not agree with HP's limitation of its production in response to this Request to the documents HP has agreed to produce in response to Requests 1 - 3. IBM does not believe that this Request is subsumed by and duplicative of Request No. 1.

Request No. 19: IBM agrees to limit the scope of this Request to read: "All documents sufficient to show the competitive relationship between IBM S/390 or zSeries computers and HP computers, including HP servers that run PSI firmware, which demonstrate that IBM and HP do (or do not) compete in the same market and/or for the same customers."

5

Request No. 20: IBM agrees to limit the scope of this Request to documents that also relate to PSI's system.

Request No. 21: IBM agrees to limit the scope of this Request to documents that also relate to PSI's system.

Request No. 22: IBM does not agree with HP's limitation of its response to documents relating to competition with z/OS, OS/390, zArchitecture and ESA/390 products. IBM requests that all documentation related to HP's and PSI's actions in the marketplace, including all documents related to competition, market conditions, and opportunities for PSI or HP to sell PSI's system, be produced. IBM further requests production of documents relating to HP's and PSI's promotion, marketing, offer to sell, offer to license or advertising of the Liberty Server and the Open Mainframe.

Request No. 23: IBM agrees to limit the scope of this Request to documents relating to PSI.

Request No. 24: IBM agrees to limit the scope of this Request to documents relating to PSI and/or the Liberty Server.

Request No. 25: IBM notes that this Request asks for documents related to T3 Technologies in addition to those related to PSI, and requests production of those documents.

Request No. 26: IBM agrees to limit the scope of this Request to documents relating to PSI.

We will be happy to discuss the scope of IBM's requests upon receipt of the first installment of HP's production in this case.

Yours very truly,

*[signature]*

Katherine J. Weall

c.c. Ryan C. Kirkpatrick, Esq.