GIBSON, DUNN & CRUTCHER LLP
JEFFREY T. THOMAS, SBN 106409
JTthomas@gibsondunn.com
3161 Michelson Dr.
Irvine, California 92612-4412
Telephone: (949) 451-3800
Facsimile: (949) 451-4220

ANGELIQUE KAOUNIS, SBN 209833
AKaounis@gibsondunn.com
333 South Grand Ave.
Los Angeles, California 90071-3197
Telephone: (213) 229-7000
Facsimile: (213) 229-7520

Attorneys for Nonparty
HEWLETT-PACKARD COMPANY

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| *In re* IBM 30(b)(6) Deposition Subpoena in the matter of:<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>      Plaintiff and Counterclaim Defendant,<br><br>    v.<br><br>PLATFORM SOLUTIONS, INC.,<br><br>      Defendant and Counterclaimant. | CASE NO. C07-80174 RMW (PVT)<br><br>Underlying action pending in the United States District Court for the Southern District of New York, CASE NO. CV 06-13565 SCR<br><br>**DECLARATION OF JOHN PICKETT IN SUPPORT OF HP'S MOTION TO MODIFY SUBPOENA AND FOR A PROTECTIVE ORDER**<br><br>[Notice of Motion, Motion, Memo. of Points and Authorities; Declarations of Angelique Kaounis and Steven Howard; Request for Judicial Notice in Support hereof; and [Proposed] Order filed concurrently herewith]<br><br>Hearing Date: June 3, 2008<br>Hearing Time: 10:00 a.m.<br>Place:   Courtroom 5<br>Before: Hon. Patricia V. Trumbull |

**PICKETT DECLARATION IN SUPPORT OF
MOTION TO MODIFY SUBPOENA /
FOR PROTECTIVE ORDER**
                                      **CASE NO. C 07-80174-RMW (PVT)**

Gibson, Dunn & Crutcher LLP

I, JOHN PICKETT, hereby declare as follows:

1. I am currently employed by Hewlett-Packard Company ("HP") as its Worldwide Mainframe Alternative Program Manager. I make this declaration in support of HP's Motion to Modify Subpoena and for a Protective Order, and specifically to provide the Court with an explanation as to the breadth of HP's Mainframe Alternative Solutions program and the confidential and proprietary nature of certain information targeted by IBM's 30(b)(6) subpoena in the above-titled matter. All matters stated herein are of my own personal knowledge, and if called as a witness, I could and would competently testify thereto.

2. I have worked at HP since April 18, 1988. During my tenure at HP, I worked in various capacities in Business Development, as well as Program Management. In my current position, I manage HP's Worldwide Mainframe Alternative Program in HP's Enterprise Server and Storage business unit. I have been in that position since approximately November, 2004. In the course of my duties as HP's Worldwide Mainframe Alternative Program Manager, I regularly work with HP business units and partners around the world (which encompass more than two dozen different entities) to enhance marketing material to enable HP's field personnel to more effectively position HP hardware, software and services as a viable alternative to workloads on a mainframe. I am also responsible for contributing to the formulation HP's long and short-term strategies in the mainframe alternative solutions area, and in coordinating HP's efforts to provide migration solutions to customers and potential customers.

3. The services, software and hardware that HP offers to customers who desire to migrate computing workloads from mainframes or other servers to solutions and environments based on HP hardware, are referred to generally as HP's Mainframe Alternative Solutions. As part of HP's Worldwide Mainframe Alternative Program, HP offers a wide range of mainframe alternative solutions that encompass six different

2

Gibson, Dunn & Crutcher LLP

**PICKETT DECLARATION IN SUPPORT OF MOTION TO MODIFY SUBPOENA / FOR PROTECTIVE ORDER**                     **CASE NO. C 07-80174-RMW (PVT)**

types of servers (marketed under the trade names ProLiant, BladeSystem, Integrity, NonStop, HP9000, and AlphaServer) and dozens of other hardware and software components, and are coupled with services and/or offerings from one or more of its numerous Independent Software Vendor (ISV) partners. HP's approach to migrating workloads from a mainframe uses a service driven offering, rather than specific prescriptive off-the-shelf solutions. HP markets this approach to suit the needs of its various customers by offering to (1) augment existing mainframe solutions; (2) modernize clients' infrastructures; and/or (3) modernize clients' applications.

4. Similarly, HP's mainframe migration strategy is a multi-faceted program that encompasses numerous HP offerings such as servers, storage, HP's BladeSystem, and HP IT services, and includes migration services from pre-planning and assessment to post-migration follow-up, porting, application modernization services, and virtualization services. Because these services are so customized, and by necessity, will vary depending on the type of system from which data is being migrated—*e.g.*, Sun or IBM—often experts for each of the various components must work with the sales personnel who are responsible for the particular client relationship to tailor an offering best suited to that client's needs.

5. Through its affiliation with HP, Platform Solutions, Inc. ("PSI") has been authorized to resell HP's Integrity servers. In connection with that status, I understand that PSI marketed its firmware solution (using HP hardware) to several potential customers, but ended up actually selling the solution to less than five customers. Thus, PSI has only been a very small part of HP's overall mainframe alternative business. Moreover, PSI was HP's only (and last) connection to any mainframe alternative solution that was capable of natively running an IBM Operating System. After 2006, any mainframe alternative solution that HP offered was on an HP supported operating system (HP-UX, Linux, NonStop, OpenVMS or Windows), not an IBM mainframe operating system. Today, neither PSI's current status as an authorized

3

reseller of HP's server products, nor its status as a member of HP's Developer & Solution Partner Program elevate it to any heightened level of strategic significance in connection with HP's mainframe alternative offerings.

6. As manager of HP's Worldwide Mainframe Alternative Program, I have become familiar with the scope of competitive information (the "Competitive Information") that HP possesses as a result of its efforts to develop, market and sell hardware, software and service solutions in this area. The Competitive Information includes: customer (and prospective customer) lists; solutions offered to and utilized by different types of customers; both long-term and short-term strategic plans and goals; specific marketing campaigns (often targeted to a certain type of client—*e.g.*, by industry or size); internal communications and meetings among HP senior managers and executives relating to strategy; specifications of hardware, software and services; and staffing and operational details relating to providing support and services to clients, among other things. This information is the result of years of industry research, cultivating customer and ISV relationships, an extraordinary amount of Research and Development ("R&D"), and significant financial investments over time.

7. HP has published a substantial amount of the high-level descriptive information concerning its mainframe alternative solutions and migration offerings to the public through brochures, marketing materials, and through its public website (the "Public Information"). *See, e.g.,* http://www.hp.com/go/offmainframes (a true and correct copy of which is attached hereto as Exhibit A). Thus, if IBM needs to demonstrate, for example, (1) that HP attempts to compete with IBM by providing mainframe alternative solutions; or (2) that HP attempts to migrate customers off of IBM mainframes and onto HP hardware, that information is publicly available at http://h71028.www7.hp.com/enterprise/cache/151824-0-0-225-121.html?jumpid=reg_R1002_USEN (a true and correct copy of which is attached hereto as Exhibit B) and http://h71028.www7.hp.com/enterprise/cache/564549-0-0-225-121.html (a true

4

and correct copy of which is attached hereto as Exhibit C). As manager of HP's Worldwide Mainframe Alternative Program, I am readily familiar with the scope of this Public Information. In fact, I am featured on HP's website in several informational videos that address and explain HP's Mainframe Alternative Solutions and migration to HP products. And, as a general matter, I also have the ability to contribute to postings of such information or to edit the mainframe alternative solution information that is posted on HP's website.

8. While there is some high-level non-confidential Competitive Information that is Public Information, in order to protect the interests of itself and its customers, HP maintains the majority of its Competitive Information as proprietary and confidential (the "Confidential Proprietary Information"). In the course of dispatching my duties as manager of HP's Worldwide Mainframe Alternative Program, I have restricted and tracked the flow of Confidential Proprietary Information on a regular basis, and I, along with others who utilize this type of information in their work at HP, am responsible for protecting this Confidential Proprietary Information from public disclosure. I am thus readily familiar with how HP maintains the confidentiality of the Confidential Proprietary Information and with which matters, as a general policy, warrant confidential treatment.

9. IBM and HP are competitors in the markets for desktop and laptop computers, server hardware, and related services and products. Permitting disclosure of HP's Confidential Proprietary Information—*e.g.*, non-public current and future business strategies and initiatives in its mainframe alternative solutions program, comparisons to competitor technologies, and analyses of current and future market dynamics—to a competitor such as IBM would most certainly cause serious competitive injury to HP because IBM could use this otherwise confidential and valuable information to ascertain (1) the underlying strengths and weaknesses of certain HP technologies that would not be apparent to a competitor from a review of

5

publicly available information; (2) areas is which HP is (and is not) focusing R&D efforts, and how HP is focusing those efforts (*e.g.*, what testing it may be doing, etc.); (3) where HP contemplates potential growth or decline in certain markets or market segments; and (4) HP's business strategies in relation to these areas of technology and business, including strategies that are tailored to specific types of customers and details regarding new and anticipated technologies, as well as other confidential and proprietary aspects of HP's operations and technology. This type of material is clearly of value to a competitor such as IBM because it provides a roadmap that can be used to preempt certain HP R&D and/or business efforts, and also allows a competitor such as IBM to focus on areas where it learns of HP's perceived weaknesses.

10. HP is also a publicly traded company. Thus, the disclosure of HP's confidential proprietary information relating to current and future business strategies of its Mainframe Alternative Solutions program and migration initiatives could damage not only HP's competitive interests vis-à-vis another competitor like IBM, but could also affect HP's stock price on the open market, because, if certain confidential business initiatives were made public, such information could prompt investors or potential investors to buy or sell HP stock when they otherwise might not do so, thereby interrupting the ordinary market forces that affect HP's stock price.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct. Executed this 28th day of April 2008 at Laguna Hills, California.

By: *John Pickett*
John Pickett

100435098_2.DOC